## TURNER *v*. ABBOTT.

### *(Jackson.* April Term, 1906.)

1. **CONTRACT. Partly in writing and partly oral, is parol contract.**

   A contract which is partly in writing, in the form of letters and telegrams, and partly oral, is a parol contract.

2. **SAME. Evidence. Competent to prove oral stipulation where partly in writing.**

   Where a contract, by which a dentist employed an assistant, was partly in writing and partly oral, it was competent to show an oral stipulation that the assistant thus employed would not, after the termination of such employment, engage in the practice of dentistry in competition with his employer.

   Case cited and approved: Leinau v. Smart, 11 Humph., 308.

3. **SAME. In general restraint of trade, void. At particular place or time, valid.**

   A contract in general restraint of trade, that is, not to engage in one's trade or profession at any place, is void as being contrary to public policy; but a contract not to engage in one's business or profession at a particular place, or for a period of time, is not invalid as against public policy, but will be upheld and enforced.

   Cases cited and approved: George & Chapman v. Coal Co., 15 Lea, 455; Muse v. Swayne, 2 Lea, 251; Gibbs v. Continental Gas Co., 130 U. S., 396; Oregon Steam Van. Co. v. Winsor, 87 U. S., 64; Harrison v. Glucose Sugar Refining Co., 116 Fed., 306; Pohlman v. Dawson, 63 Kan., 471; Anchor Elec. Co. v. Hawks, 171 Mass., 101; Diamond Match Co. v. Roeher, 106 N. Y., 473; Mallan v. May, 11 M. & W., 653; Hitchcock v. Coker, 6 A. & E., 438; Harner v. Graves, 7 Bing., 735; Nichols v. Stretton, 100 Q. B., 346; Pemberton v. Vaughan, 10 Q. B., 87.

Turner v. Abbott.

Cases cited and distinguished: Tuscaloosa Ice Mfg. Co. v. Williams, 127 Ala., 110; Carroll v. Giles, 30 S. C., 412.

4. SAME. Same. Same. Case in judgment.

A contract whereby an assistant employed by a dentist, at a stipulated salary, agrees that, after the termination of such employment, he will not engage in the practice of dentistry in a designated town where the employer is then located, is not an unlawful restraint of trade, nor against public policy, but is valid and enforceable.

FROM OBION.

Appeal from the Chancery Court of Obion County.— JOHN S. COOPER, Chancellor.

W. H. SWIGGART and THOS. M. PIERCE, for Turner.

CALDWELL & FRY, for Abbott.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainant, who is a dentist practicing his profession in the town of Union City, preferred this bill against the defendant R. F. Abbott, who is also by profession a dentist, to enjoin the latter against opening a dental office in the town of Union City and its immediate vicinity, in violation of a contract alleged to have been made with the complainant.

It is alleged in the bill that complainant, Turner, has been practicing the profession of dentistry in Union City, Tennessee, for the last seven years; that he had established a fairly successful business and enjoyed the patronage of a large number of friends and patients; that on or about January 1, 1904, being in need of an assistant dentist, he took into his employment the defendant, who was a young man with little experience in his profession and only recently graduated. It is alleged that said defendant, Abbott, was then a citizen of Mississippi, and had never theretofore resided in Union City, and had but few or no acquaintances in said place; that complainant employed defendant, Abbott, to assist him in his dental parlors for an indefinite period on a salary of $100 per month; that complainant emphatically stated to the defendant at the very outset of their negotiations that he would not employ him and introduce him to his friends and patients as a dentist, except upon the agreement and understanding as a part of the contract, that he would not open an office or practice dentistry in competition with complainant when he ceased to work for complainant in the town of Union City and its immediate vicinity. It is then alleged that said defendant, Abbott, agreed and assented to said proposition unhesitatingly, and assured complainant that it was not his purpose to locate or practice dentistry in Union City at any time after he ceased to be employed by complainant; that it was with this distinct understanding and agree-

ment between them that complainant employed said Ab-
bott, and it was a part of the consideration upon which
he was employed that he was not to practice his profes-
sion in the town of Union City in competition with com-
plainant after he left the employment of complainant.

It is then alleged that, after making said contract, de-
fendant, Abbott, moved to Union City, and about Jan-
uary 11, 1904, began to work for complainant as such
assistant dentist, and continued in his employment un-
til August 11, 1904, when by mutual consent defendant
ceased to work for complainant and went back to his
home, with the understanding at the time that he in-
tended to begin the practice of dentistry at some point
in Mississippi; that complainant fully complied with the
contract in every particular; that he paid the said Ab-
bott $100 per month during the time he worked for com-
plainant, a period of seven months, which was a large
salary for a young man just out of college and with little
experience.    It is then alleged  that, notwithstanding
these facts, and in utter disregard of his obligations un-
der said contract, the defendant, Abbott, came back to
Union City from Mississippi for the purpose of locating
there to practice the profession of dentistry, and had
formed a partnership with Dr. P. M. Joiner, another
dentist, and with him had prepared and opened an office
for dental practice in Union City, Tennessee, for the pur-
pose of practicing dentistry, within about one block of
complainant's dental parlors, and had begun the prac-

tice of dentistry at said place in opposition to complainant, having advertised himself as a dentist and holding himself out as such.

The bill prayed for a permanent injunction against the defendant, restraining him from practicing the profession of dentistry in the town of Union City in violation of said agreement, and also asked that an account be taken to ascertain the damages already sustained by complainant.

The defendant answered the bill, in which he admitted his employment as an assistant at a salary of $100 per month; but he denied that it was a part of said contract that, when he ceased to work for complainant, he was not to set up in his profession or open a dental office in opposition to complainant in the town of Union City. Defendant further avers that the contract entered into between the parties was finally consummated by letters and telegrams and was thus in writing, and that said correspondence does not mention or in any way refer to the question of competition in the future. Defendant further avers that, had such an agreement been made, it would be inoperative and void because in unlawful restraint of trade and against public policy. Defendant admits that he had formed a partnership with Dr. Joiner for the practice of dentistry in Union City and had commenced to practice a few days before the bill was filed.

Proof was taken by both sides, and on the final hearing the chancellor decreed in favor of complainant, finding the contract as alleged, and that it had been violated

Turner v. Abbott.

by the defendant. Whereupon a permanent injunction was ordered, restraining defendant from the further practice of dentistry in Union City or vicinity. No proof was offered showing any actual damages sustained by complainant during the time defendant had engaged in the practice of dentistry in violation of said contract, and no decree was made by the chancellor on the subject of damages.

The defendant appealed and has made the following assignments.

First. The chancellor erred in holding and decreeing that the defendant, on entering the employment of the complainant, and as a part of the contract of service, agreed never to open a dental office or to practice dentistry in opposition to the complainant in Union City or vicinity. It is claimed the evidence does not establish such an agreement.

Second. The chancellor erred in judging and decreeing that such an agreement was legal and enforceable in a court of equity. It is insisted that, had such an agreement been made, it would be nonenforceable, illegal, and void because in unlawful restraint of trade and against public policy.

We proceed to state our conclusions reached from an examination of the record and the argument of counsel:

First. The contract between the parties was not a written contract, but partly in writing and resting partly in parol. It was a parol contract. The negotiations which finally resulted in the employment of the

defendant were conducted at the Palace Hotel, in Union City, and all the details, including the covenant against future competition in the practice of dentistry, agreed on, except the amount of compensation. At that interview, Dr. Turner offered $75 per month, and Dr. Abbott suggested $100 per month, and when the parties separated, it was with the understanding that Dr Abbott would take the proposition of Dr. Turner under advisement and notify him from his home in Mississippi of its acceptance, or nonacceptance. Dr. Abbott telegraphed Dr. Turner on the 2d of January, 1904, he could not accept $75, and on January 3d wrote Turner a letter saying he felt constrained to decline the offer of $75, but would accept a salary of $100 per month and begin work on the 11th. "Dr. Turner wrote Dr. Abbott on the 5th of January that he was sorry he was not coming and urged him to come, saying he would pay him in proportion over the $75 as per your merit, and you to be the judge, and will allow you the advantage of becoming an equal partner on the terms stated when you were here. Dr. Abbott on January 7th, telegraphed, in reply, that he would accept the offer and reach Union City Sunday night. Dr. Abbott himself did not regard the contract as wholly in writing, for he stated to several witnesses that it was not enforceable for that very reason, to wit, that it had not been reduced to writing. Although the contract in this case was partly in writing, it may be shown that there was a stipulation in parol not to engage in future competitive practice of dentistry with

complainant. *Leinau* v. *Smart,* 11 Hump., 308. It was also decided in above case that the statute of frauds has no application to such a contract.

Second. We agree with the chancellor that, by the great preponderance of the evidence, the contract as claimed by the complainant has been established.

Third. Such a contract is not in unlawful restraint of trade or against public policy, but is valid and enforceable.

The general rule on this subject, deducible from the authorities, is that a contract in general restraint of trade, that is, not to engage in one's trade or profession at any place in the realm, is void as being contrary to public policy; but a contract not to engage in one's business or profession at a particular place, or for a period of time, is not invalid as being contrary to public policy, but such contracts will be upheld and enforced. 2 Parsons on Contracts, 748 et seq., note Z; 2 Pomeroy, Eq. Jur., section 934; 3 Pomeroy, Eq. Jur., section 1344, and note.

Mr. Beach, in his work on contracts (section 1570), says: "That while a contract in restraint of trade in general is against the policy of the law, a party may legally bind himself for a valid consideration not to conduct a particular trade or business in a particular place, or for a definite or indefinite period of time; also that an agreement not to pursue a particular business or profession, when made on a good consideration with one whose business interest it is to prevent competition, is

valid if restrained within reasonable limits." See, also, sections 1571, 1573, 1574.

Mr. Pomeroy, in his work on Equity Jurisprudence (volume 2, section 934), says: "On the other hand, contracts in partial restraint of trade are valid. To this end, they must be partial with respect to the territory included; reasonable with respect to the amount of territory, the circumstances, and the rights of the party burdened, and the one benefited by the restriction and the number and the interests of the public whose freedom of trading is circumscribed; and made upon a valuable and sufficient consideration. The jurisdiction of equity is generally exercised in respect of these contracts for the purpose of indirectly compelling their specific performance by means of an injunction preventing their violation." Citing cases.

In *Gibbs* v. *Continental Gas Co.*, 130 U. S., 396, 9 Sup. Ct., 553, 32 L. Ed., 979, Chief Justice Fuller said: "The decision in *Mitchell* v. *Reynolds,* 1 Peere Williams, 196, is the foundation of the rule in relation to the invalidity of contracts in restraint of trade, but it was made under a condition of things and a state of society different from those which now prevail. The rule laid down is not regarded as inflexible and has been considerably modified. The public welfare is first considered, and, if it be not involved and the restraint upon one party is not greater than the protection to the other party requires, the contract may be sustained. The question is whether, under the particular circumstances of the case,

and the nature of the particular contract involved in it, the contract is or not unreasonable."

In *Oregon Steam Nav. Co.* v. *Winsor,* 87 U. S., 64, 22 L. Ed., 315, Mr. Justice Bradley said: "Cases must be adjudged according to their circumstances, and can only be rightly adjudged when the reason and grounds of the rule are carefully considered. There are two principal grounds on which the doctrine is founded that a contract in restraint of trade is void as against public policy; one is the injury to the public by being deprived of the restricted party's industry, the other is the injury to the party himself by being precluded from pursuing his occupation and thus being prevented from supporting himself and his family. It is evident that both these evils occur when the contract is general, not to pursue one's trade at all, or not to pursue it in the entire realm or country. The country suffers the loss in both cases, and the party is deprived of his occupation or is obliged to expatriate himself in order to follow it. A contract that is open to such grave objection is clearly against public policy; but, if neither of these evils ensue, and if the contract is founded on a valid consideration and a reasonable ground of benefit to the other party, it is free from objection and may be enforced." See also, *Pohlman* v. *Dawson* (Kan.), 65 Pac. 689, 54 L. R. A., 913, 88 Am. St. Rep., 249.

In the case of *Harrison* v. *Glucose Sugar Refining Co.,* 116 Fed., 306, 53 C. C. A., 484, 58 L. R. A., 915, the defendant was enjoined from violating a contract made

with an employer not to become interested with any other association or to enter the employment of any other person or association engaged in like business during the period of the year. Discussing the question of contracts in restraint of trade, Judge Jenkins of the seventh circuit court of appeals, says: "The instances in which the rule of restraint has been applied may be thus classified: (1) Where the vendor of a business and its good will covenants that he will not enter the same line of business; (2) where the limitation is to take effect after the expiration of a contract period of service; (3) where the servant has been discharged; (4) where the master has acquiesced in the abandonment of the service of the servant. See, also, *Anchor Elec. Co. v. Hawks* (Mass.), 50 N. E., 509, 41 L. R. A., 189, 68 Am. St. Rep., 403, and especially the case of *Diamond Match Co. v. Roeber*, 106 N. Y., 473, 13 N. E., 419, 60 Am. Rep., 464, for a very elaborate and instructive discussion of the subject by Judge Andrews of the New York court of appeals. In this State, while we have no case in which the subject has been very fully considered, the rule just extracted from the authorities has been distinctly announced. In *George & Chapman v. Coal Co.*, 15 Lea, 455, 54 Am. Rep., 425, it was said by this court that a contract not to carry on one's trade anywhere is void, but that a contract not to carry it on in a particular place is valid. Citing 2 Parsons on Contracts, 748, and note Z therein; *Muse v. Swayne*, 2 Lea, 251, 31 Am. Rep., 607.

Eminent counsel for appellant conceded the general

Turner v. Abbott.

rule in argument at the bar. We may best understand his position from the following extracts from his learned brief: "A merchant in business may sell his stock in trade and his good will for a valuable consideration, and may at the same time lawfully bind himself not to compete thereafter at the same place with the purchaser, and so a lawyer, a doctor, a dentist, or any other professional man, may sell his professional business and good will for a valuable consideration, and at the same time (according to the latter holdings, but contrary to the former holdings) by a proper stipulation lawfully bind himself not thereafter to enter into competition with the purchaser at the same place; . . . . but we contend that a man trained as a merchant, being without a business or goods or good will at the time to sell, cannot by any kind of stipulation, or for any consideration, bind himself not thereafter to begin a commercial business in competition with a given person at a given place, nor can a lawyer, a doctor, a dentist, or any other professional man, without some business or an office or some professional good will at a given place to sell, bind himself by whatever stipulation or for whatever consideration not to open an office or practice his profession at that place in the future. . . . . No more could the the defendant Abbott without an office, without business, and without professional good will at Union City lawfully bind himself for any consideration or by any stipulation not thereafter to open a dental office and practice dentistry at that place." Counsel cites in sup-

port of his proposition *Tuscaloosa Ice Mfg. Co.* v. *B. H. Williams* (Ala.), 28 South., 669, 50 L. R. A., 175, 85 Am. St. Rep., 125; *Carroll* v. *Giles* (S. C.), 9 S. E., 422, 4 L. R. A., 154.

An examination of the able opinion of the late Chief Justice McClellan, in *Tuscaloosa Ice Co.* v. *Williams,* supra, will show that the contract in that case was adjudged void because, in the opinion of the court, it created a monopoly. It was held that a contract to create a monopoly in any community of common utility or of common consumption is against public policy, whether such monopoly be one of the common necessaries of life or not. Applying the principle of law just stated to the facts of that particular case, it was held that a contract by the owner of an ice machine to discontinue the manufacture of ice in a certain town for the term of five years, when made without any sale of his business and in consideration of the payments by the owner of the only other ice plant in the place, in which there was a demand for ice sufficient to consume and render marketable the output of both factories, was void as against public policy because of the restraint upon trade and the creation of a monopoly in the supplying of ice within that town. In our opinion that case furnishes no authority for the proposition advanced by learned counsel that, because at the time of entering into the contract the defendant Abbott had no professional business, good will, or property to sell, any stipulation or agreement he might make in reference to noncompetition with the

Turner v. Abbott.

complainant in the future would be absolutely null and void, because in unlawful restraint of his professional trade and business. In our opinion the contract in the case now being decided cannot be classified as one creating a monopoly. Says Mr. Page, in his work on Contracts (volume 1, sec. 373), as follows: "When contracts in restraint of trade first came before the English courts, they were treated as necessarily illegal and invalid. This view undoubtedly was taken because contracts in restraint of trade were confused with contracts tending to create a monopoly. The next step in the development of this doctrine was to recognize that some contracts in restraint of trade might be valid, if the restraint was reasonable and designed merely to protect good will. Unfortunately, the confusion between contracts whose sole objectionable feature was that they were in restraint of trade, and contracts objectionable as tending to a monopoly, proceeded for some time, and some of the early American cases treat monopoly contracts as if their sole objectionable feature were that they were in restraint of trade, and as if monopoly contracts in transcending the limits fixed for contracts in restraint of trade must necessarily be valid, and the failure to make this distinction is the cause of some confusion in the later cases. The present attitude of the law is that contracts which do not aim to stifle competition but merely to transfer a business and good will from one person to another, are very different in their effect from those which aim to stifle competition and to build up a monopoly."

The author, at section 434, cites the case of *Tusca-loosa Ice Co.* v. *Williams,* supra, under the head of "Buying off Competition," and says: "Where, without a sale of good will, or through legitimate dealing there-with, one party agrees with the other to abstain from business, such contract is invalid without regard to its reasonableness as to their space or time. Such contracts are equally invalid whether the competition is expressed directly or indirectly"—citing numerous cases.

We are of the opinion, however, that the contract now under investigation is controlled by different prin-ciples and belongs to that classification which has been repeatedly adjudged valid by the courts of this country and of England. Mr. Page, in his work on Contracts (volume 1, sec. 374), says: "Accordingly, if not unrea-sonable, a contract restraining the vendor of good will from re-entering business to the ruin of the good will, even though no property passes in connection with the sale of good will of a business which is carried on with-out any property or plant, as in the sale of the good will or an agency for the sale of sand, or of the good will of a steamship business without selling the vessels, put-ting them on another route, a contract whereby A. aban-dons his business to enter B.'s employment, A. agreeing not to re-enter in such business, a contract restraining a retiring partner from engaging in the same business as that retired from, and a contract restraining an agent or employee from competing with his employer after his employment ends, are each held valid"—citing

numerous authorities in the notes, where the rule has been applied to the employment of salesmen, teachers, dentists, and others.

Prof. Keener, in his Selections on Contracts (volume 2, p. 825), in dealing with the English cases on this subject, cites *Mallan* v. *May*, 11 M. & W., 653, *Hitchcock* v. *Coker*, 6 A. & E., 438, and other cases, upholding contracts made by tradesmen, manufacturers, and professional men, on taking a servant or clerk into the service, that he will not carry on the same trade or profession within certain limits. The author states that, before the case of *Hitchcock* v. *Coker*, supra, a notion prevailed that the restraint, in order to be allowed by law, must not only be reasonable in extent, but must also be supported by an adequate consideration given for it; that is to say, a consideration equal in value to that which the party restrained loses by the restraint under which he places himself, but that doctrine was overruled in the above case, where it was decided to be sufficient that there was a legal valid consideration, and that the value of it is an equivalent to the restraint was a matter to be left to the agreement of the parties, and one which could not be inquired into by the court. In *Horner* v. *Graves*, 7 Bing., 735-743, the court said: "We do not see how a better test can be applied to the question whether reasonable or not than by considering whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given and not so large as to interfere with the interests of the

public. Whatever restraint is larger than the necessary protection to the party can be of no benefit to either. It can only be oppressive, and, if oppressive, it is in the eye of the law unreasonable. Whatever is injurious to the interests of the public is void on the grounds of public policy. The application of the rule can only be at last with reference to the particular case."

In *Mallan* v. *May,* supra, "by articles of agreement between the plaintiff and the defendant in which the defendant  agreed to become assistant to the plaintiff in his business of surgeon-dentist for a term of four years, the defendant covenanted that after the expiration of that term he would not carry on that business in London or in any of the towns or places in England or Scotland where the plaintiff might have been practicing before the expiration of the defendant's service. It was held that the covenant as to London was valid, but that the rest of the covenant was void as imposing an unreasonable restraint exceeding what the interest of the plaintiff could reasonably require, and giving him the power of preventing the defendant from practicing anywhere.

In *Nichols* v. *Stretton,* 100 Queen's Bench, 346, it was held: "A covenant by an attorney's articled clerk not to act as attorney for any person who had already been or should thereafter become a client of the plaintiff was held to be unreasonable, but valid as to the persons who were clients before and during the defendant's articles."

In *Hitchcock* v. *Coker,* supra, it was held as follows: "It is not unreasonable that the duration of the restric-

Turner v. Abbott.

tion should not be limited to the life of the person for whose benefit it is made, or to the time during which he may carry on the business as it may be necessary in order to secure the value of his business to a purchaser or to his representatives after his death, that the restriction be continued for the whole life of the party upon whom it is imposed." See, also, *Pemberton* v. *Vaughan,* 10 Q. B., 87; Page on Contracts, vol. 1, secs. 379, 380.

Our examination of the authorities has not confirmed the suggestion of learned counsel that a contract inhibiting future professional competition is not valid, unless at the time the party inhibited has an established practice or professional good will or a mercantile business which may be made the subject of sale. On the contrary, we find numerous cases, English and American, where a clerk or employee, teacher or salesman, on entering the service of a tradesman, manufacturer, or professional man, has been bound by a lawful contract not to engage in a competitive business with his employer. In the present case, the defendant was paid for his services a salary of $100 per month, which was large compensation to a young man who had just graduated, and under the authorities it was perfectly competent for the parties to make the contract in question which only prohibits the future competition in Union City and vicinity. We think this contract was reasonable and not oppressive; nor was it in any way detrimental to the interests of the public.

It results that the decree of the chancellor will be affirmed.