# FEDERATED MUTUAL IMPLEMENT AND HARD-WARE INSURANCE COMPANY v. HOWARD E. AN-DERSON. No. 33—351 S. W. (2d) 411.

Eastern Section. May 9, 1961.

Certiorari Denied by Supreme Court October 20, 1961.

Ambrose, Wilson & Saulpaw, Knoxville, for appellant.

Donaldson, Montgomery & Kennerly, Knoxville, for appellee.

COOPER, J. This is an action seeking to enforce the restrictive provisions of an alleged employment contract and for damages for its breach. The material averments of the complainant's bill were that it employed the defendant as a full-time, salaried insurance agent on September 1, 1952, and that the defendant's employment continued without interruption until it was terminated by complainant on December 5, 1959. The last contract of employment was executed on January 1, 1957 and provided, in part, as follows:

"5. Salesman agrees that he will not, within a period of two years following the date of the voluntary or involuntary temination of his employment with Employer, either directly or indirectly, by and for himself, or as the agent of another, or through others as his agent:

"(a) Engage in, or in any way be connected with, the fire, casualty and accident and health insurance

business in the territory assigned to him or worked by him under this or under any other previous Contracts of Employment, if any, with Employer;

"(b) Divulge the names of Employer's policyholders and accounts to any other person, firm or corporation;

"(c) In any way seek to induce, bring about, promote, facilitate or encourage the discontinuance of, or in any way solicit for and in behalf of himself or others, or in any way quote rates, accept, receive, write, bind, broker or transfer any renewal or replacement of any of the insurance business, policies, risks, or accounts written, issued, covered, obtained (whether through the efforts of the Salesman or not) or carried by the Employer in any territory or territories assigned to the Salesman under this or under any other previous Contracts of Employment, if any, with Employer."

The territory assigned to the defendant consisted of Knox, Anderson, Scott, Claiborne, Roane and Morgan counties, in Tennessee.

The complainant averred that it properly terminated the defendant's employment on December 5, 1959; that immediately thereafter the defendant entered into the general insurance business in the restricted territory and actively solicited the complainant's policyholders. The complainant sought damages from the defendant for breach of contract and sought to enjoin the defendant from further violation of the restrictive provisions of the contract.

A temporary injunction was issued restraining the defendant from directly or indirectly engaging in the

general insurance business in the restricted territory, and, particularly, from soliciting the complainant's policyholders.

The defendant, in his answer, admitted that he was employed by the complainant on September 1, 1952, and that the territory in question had been assigned to him. The defendant denied that he voluntarily entered into the employment contract dated January 1, 1957, and avers that he was coerced into signing the contract and that his signature was secured by fraud. The defendant admitted that the complainant terminated the defendant's employment on December 5, 1959, but charged that the termination was without cause. Defendant also admitted writing insurance in the restricted territory after his employment was terminated, but denied procuring the cancellation of any of complainant's policies.

The defendant also filed a cross-bill alleging that he had suffered loss of income by reason of the complainant's securing the defendant's participation in the employment contract of January 1, 1957 by fraud and misrepresentation as to compensation and job security; that the complainant was undertaking to use the contract to the irreparable damage of the defendant, and prayed the cancellation and rescission of said contract.

The evidence disclosed that the defendant was employed by the complainant as an agent on September 1, 1952 and was assigned an established, restricted territory. At the time of his original employment, the defendant executed a contract which provided that he would not engage in the general insurance business in his assigned territory within a two-year period after the termi-

nation of his employment with complainant. At various times during his employment the rate of the defendant's compensation was changed and the defendant executed a new contract. Each of the contracts contained the restrictive provision. The last written contract entered into between the parties was dated January 1, 1957 and contained the restrictive covenants set out above. The contract further provided that it could be terminated at any time by the complainant or the defendant "by mailing or delivering to the other written notice of termination."

On March 18, 1958, the complainant wrote the defendant that:

"After a careful review of your record for 1956 and 1957 with low production and heavy cancellations resulting in loss of premium income for both years, we think it best for you and the Company that you terminate your employment with Federated Mutual by April 5th, 1958.

"Please arrange to ship all Company supplies, expiration cards, invoice copies, tabulated premiums for all of 1957 and January 1958 to me here in Nashville. Your last salary check will be held pending receipt of these supplies at 806 Broadway, Nashville, Tennessee.

"May I wish you the very best of luck in whatever business you enter but I want to mention specifically that part of your employment contract with Federated Mutual which prohibits your soliciting our accounts in the Knoxville area."

Shortly thereafter, Mr. C. A. Peterson, state agent for the complainant, met with the defendant in Knoxville

and the parties agreed that the defendant's services with the complainant would continue without interruption. On March 28, 1950, Mr. C. A. Peterson wrote the following letter to the defendant:

"This letter is intended merely to confirm the fact that your service with Federated continues without interruption and to assure you that so long as you maintain the Company's minimum requirement of $1500 per month production and 10% cancellation ratio, your sales position with Federated is just as stable as it can be. For two months of 1958 you have over $1700 per month average and a cancellation ratio of 6%. I hope you hit $1700 in March and assure yourself of $117 cash bonus.

"Start April with the full determination to produce a minimum of $1650 every month and make an additional 1% commission as a monthly bonus and then an additional 2% quarterly bonus if you have $5000 production for the quarter.

"As I told you when I left Knoxville, I plan to spend three days with you the week of April 14th, so plan three good days work.

"With warmest personal regards to both you and family, I am"

There was no break in the defendant's service with the complainant as a result of the letter of March 18 and there was no period of time in which the defendant's compensation was terminated. Defendant continued to sell and service complainant's policies in the assigned territory and was compensated at the rate provided for in the January 1, 1957 employment contract.

The complainant finally terminated the defendant's service on December 5, 1959, by letter dated November 24, 1959. The defendant immediately entered into the general insurance field as a broker and, on January 20, 1960, opened his own insurance agency. The area serviced by the defendant's insurance agency was the same area in which he had worked for the complainant. The defendant admitted writing numerous policies for clients whom he had serviced while in the employ of the complainant, and further stated that he had "old" records showing the termination dates and types of coverage of the complainant's policyholders.

From this evidence the chancellor concluded that the "gist of the lawsuit * * * is contained in these letters of 1958;" that the defendant voluntarily executed the employment contract of January 1, 1957, but that the contract was terminated by complainant's letter of March 18; that the defendant was thereafter re-employed by the complainant under a new contract which did not "restrict the defendant against anything." Based on these findings, the chancellor entered a decree dissolving the injunction that had been issued in this case and dismissing the complainant's bill, and ordered a reference to the Master to determine whether or not the defendant "suffered any loss by reason of the suing out of this injunction." The complainant perfected a broad appeal from the chancellor's decree.

We are of the opinion that the evidence in this case preponderates against the chancellor's findings that the contract of January 1, 1957 was terminated by the letter of March 18, 1958, and that the defendant was re-employed by the complainant under a new contract which

"did not restrict the defendant against anything." The effect of the letter of March 18 and later conference between the parties was clearly stated in the following testimony of the defendant:

"(Tr. 164) Q. In 1958 you received a letter from Mr. Peterson suggesting you terminate your services? A. Yes, sir. Believe the letter was very specific. Believe it terminated my services.

"Q. That letter is in evidence here, dated March 18th. Did you receive that letter? A. Yes, I received that letter. This is pretty specific I was to be fired April, 1958.

\* \* \* \* \* \*

"(Tr. 179) Q. On March 28, 1958, on that date, or prior to that date, you all got back together? A. Yes, he called me from the Farragut Hotel and asked me to discuss the matter with him.

"Q. You agreed then to continue your employment? A. Yes.

\* \* \* \* \* \*

"(Tr. 199) Q. Did you after receiving that notice make any further agreement? A. I agreed to stay with the company.

\* \* \* \* \* \*

"(Tr. 177) Q. You agreed to continue, you say under the old contract, isnt that true? A. The contract wasn't discussed at this point.

"Q. You agreed to continue your employment? A. Yes.

\* \* \* \* \* \*

"(Tr. 164a) Q. After you had received that letter did he then write you on March 28th confirming your employment would continue? A. Yes, sir.

"Q. Is that a copy of that letter? A. That is a confirmation of the discussion we had.

"Q. Did you on the basis of that agreement agree to continue with Federated? A. Yes, sir."

Moreover, the letter of March 28, 1958 clearly states "that your service with Federated continues without interruption."

█ From the foregoing testimony and the letter of March 28, 1958 it is evident that the letter of March 18, 1958 did not terminate the defendant's employment, but was merely notice that his employment *would be* terminated on April 5, 1958; that prior to that date the notice was rescinded by mutual agreement and the defendant's employment continued under the provisions of the January 1, 1957 contract, without interruption.

It is further insisted by the complainant that the chancellor erred in denying the complainant the injunctive relief sought and in failing to award damages for breach of contract.

█ Contracts to protect an employer by restriction of subsequent employment of the employe within reasonable lengths of time and space are permitted and sanctioned and equity will enjoin an employe from competing in violation of the restrictive provisions of his employment contract. Turner v. Abbott, 116 Tenn. 718, 94, S. W. 64, 6 L. R. A., N. S., 892; Matthews v. Barnes, 155 Tenn. 110, 293 S. W. 993, 52 A. L. R. 1350; Arkansas

Dailies v. Dan, 36 Tenn. App. 663, 260 S. W. (2d) 200, 204.

■ The restrictive provisions in the present employment contract limited defendants activities for a two-year period of time only in the territory in which he worked as an employee of the complainant. This restriction was reasonable as to time and space in view of the nature of complainant's business, the terms of the policies, and the defendant's admitted knowledge of the complainant's policyholders, their coverage, rates and the expiration dates of their policies.

As stated in Arkansas Dailies v. Dan, supra:

" 'A business is built upon the confidence of its customers and the employee gains acquaintances and sells the customers by using the good will of the employer. The employer's dealings with his customers through the employee gives the employee confidential knowledge that should not be divulged or used for his own benefit. It is by reason of this personal, if not confidential, relationship which the parties sustain that contracts to protect the employer by restriction of subsequent employment within reasonable limits of time and of space are permitted and sanctioned, and equity will enjoin the employee from competing in violation of his covenant. Briggs v. Butler, 140 Ohio St. 499, 45 N. E. (2d) 757, 762.' "

We are of the opinion, therefore, that the chancellor erred in dissolving the injunction in this case.

Further we are of the opinion that the complainant is entitled to damages resulting from the defendant's

breach of the restrictive covenant in the employment contract. The complainant introduced testimony that its gross premium loss was $8,140.00 for the period of December 1, 1959 through May 31, 1960; that the loss to the company was 25 percent of the net premium loss, and that the normal cancellations and failure to renew ratio was 10 percent. This "ratio" was determined from experience in the restricted territory during the time the defendant was employed. There was no proof in the record of the effect on the "ratio" by the change over from an agent who had worked a territory for many years to a new agent, and it is reasonable to assume that premium losses would result from cancellations of friends and acquaintances of the former agent as they would naturally have confidence in their personal relationship. Further, the total premium loss, as testified by the complainant, included those cancellations which occurred after the defendant was enjoined from soliciting insurance in the restricted territory. No proof was offered to show that the defendant violated the injunction and continued soliciting the complainant's policyholders. Consequently, we can see no basis to charge the defendant with these cancellations and failures to renew without specific proof that they were directly attributable to the acts of the defendant and not due to the failure of the complainant to service its contracts, or to the inability of a new salesman to sell the company and himself.

The complainant made no effort to separate, with reasonable certainty, the premium loss that resulted from the defendant's violation of the restrictive provisions of his employment contract from the premium loss which occurred after the injunction was granted,

nor from the loss that occurred by the change over from defendant to a new agent, and we are unable to do so.

■ Where it appears from the record, as it does here, that more satisfactory evidence can be obtained on the issues presented, and, if produced, will enable the Court to come to a more equitable conclusion, the cause may be remanded for such additional proof. T. C. A. sec. 27-329. First Nat. Bank v. Ivie, 41 Tenn. App. 187, 293 S. W. (2d) 34; Jones v. Allied American Mut. Fire Ins. Co., 38 Tenn. App. 362, 274 S. W. (2d) 525; Gibson's Suits in Chancery, 5th Edition, Section 1404.

Accordingly, the decree of the chancellor will be reversed and a decree will be entered here enjoining and restraining the defendant, Howard E. Anderson,

"from directly or indirectly engaging in or in any way being connected with the fire, casualty and accident and health and life insurance business in the counties of Knox, Anderson, Scott, Roane, Claiborne and Morgan, all of which are within the State of Tennessee; and you are enjoined from divulging the names of the complainant's policyholders and accounts to any other persons, firms, or corporations; and from in any way seeking to induce, bring about, promote, facilitate or encourage the discontinuance of, or in any way soliciting for and in behalf of yourself or others, or in any way quoting rates, accepting, receiving, writing, binding, brokering or transferring any renewal or replacement of any of the insurance business, policies, risks, or accounts, written, issued, covered, obtained (whether through the efforts of you, the defendant or not), or carried by the complainant in the above territory

> assigned to you, or worked by you while in the employ of the complainant,"

until December 5, 1961, and the cause is remanded for the enforcement of the injunction and for the taking of proof on the issue of damages. Costs of the appeal are adjudged against both parties equally.

McAmis, P. J., and Hale, J., concur.