# DAVID L. RAMSEY, Appellant, v. MUTUAL SUPPLY COMPANY, Appellee.—427 S.W.(2d) 849.

Middle Section.  February 23, 1968.

Certiorari Denied by Supreme Court May 6, 1968.

See also 221 Tenn. 437, 427 S.W.2d 211.

J. O. Bass and J. Bradbury Reed, of Bass, Berry & Sims, Nashville, for appellant.

K. Harlan Dodson, of Hooker, Keeble, Dodson & Harris, Nashville, for appellee.

PURYEAR, J. This is a suit by a former employer to enjoin a former employee from violating a restrictive covenant in a contract of employment.

There is little or no dispute about the salient facts of the case, which are as follows:

Mutual Supply Company, hereinafter referred to as "Mutual," is a wholesale distributor of veterinary products, primarily drugs, and it employs two salesmen to call upon its customers, all of which customers are veterinarians.

Mutual's sales territory consists generally of all of Kentucky and Tennessee, northern Alabama and northern Mississippi. In October, 1964, Mutual employed Ramsey to serve as one of its two salesmen, but there was no written contract of employment executed.

However, at the time of such employment, Ramsey signed an agreement which provided, among other things, that upon termination of his employment for any cause whatsoever, he would not engage in any work for any individual, firm or corporation or be associated in any manner with any individual, firm or corporation in such line of business or a similar line of business otherwise carried on by Mutual during its employment of Ramsey within the territory comprising the States of Kentucky, Tennessee, northern Alabama, and northern Mississippi for a period of five years after termination of such employment.

Ramsey served as a salesman for Mutual and called on veterinarians from the time of his employment until January 21, 1967, within the area of Western Kentucky, West Tennessee and the northwestern corner of Alabama and part of the northern portion of Mississippi.

During this time, the remainder of Mutual's territory, to-wit: central and eastern Kentucky, all of Tennessee east of Nashville, a portion of northern Alabama and a

portion of northern Mississippi was served by a Mr. Billingsley, the only other salesman employed by Mutual.

During the period of eighteen months preceding his employment by Mutual, Ramsey worked as a salesman for Lemmon Pharmaceutical Company, whose primary line of goods was products to be used by humans, but as a salesman for such company he also had a line of veterinary products and would call on veterinarians in a portion of the territory assigned to him later by Mutual. The territory covered by him for his former employer, Lemmon, was Middle Tennessee and southern Kentucky.

Ramsey did not receive any training by Mutual and there are no trade secrets in Mutual's business, its method of operation being substantially the same as that of all of its competitors.

While Ramsey was employed by Mutual, he called on each of the veterinary customers in his sales area about once every six weeks. During the term of his employment he met with Mutual's president every Saturday and about once every two or three weeks the other salesman, Billingsley, would attend these meetings. When both salesmen attended meetings, joint problems of both of them would be discussed, for example competitive pricing and financial problems of customers.

One of the companies for whose products Mutual was distributor during Ramsey's employment was Evsco Pharmaceutical Company, whose products accounted for less than three percent of Ramsey's sales for Mutual.

In January, 1967, Ramsey learned that EVSCO planned to start selling its products through its own salesmen and would no longer use independent distributors. Ramsey then approached EVSCO and was told that they could

not discuss the matter of employing him while he was employed by Mutual. Ramsey then conferred with the president of Mutual and requested an increase in commissions being paid to him, but this was refused and Ramsey then voluntarily resigned as a salesman for Mutual.

During the time he was employed by Mutual, such employer paid Ramsey's traveling expenses.

The employment of Ramsey by EVSCO, after leaving Mutual, was for the exact territory in which he had represented Mutual during his employment by it, with the exception of northern Mississippi, which he was not serving at the time of the trial of this case and with additional territory in East Tennessee and Kentucky where he had not represented Mutual.

On March 23, 1967, Mutual filed the bill in this case seeking to enjoin Ramsey from competing with it by engaging in the sale, distribution or solicitation of orders for veterinarian supplies in any form in the entire territory of Kentucky, Tennessee, northern Alabama and northern Mississippi for a period of five years after January 21, 1967.

After issues were joined by answer filed by Ramsey, the case was heard by the Chancellor upon oral proof as a result of which the Chancellor enjoined Ramsey from competing with Mutual by engaging in the sale, distribution or solicitation of orders for veterinarian supplies in any form in that portion of Mutual's sales territory in which Ramsey had formerly represented Mutual. Such territory is specifically described in the Chancellor's decree and an injunction was ordered to

remain in full force and effect for a period of five years from and after January 21, 1967. (Tr. pp. 33, 34, 35.)

From this decree, Ramsey has prayed and perfected his appeal to this Court and filed three assignments of error as follows:

## I

"The Court erred in refusing to hold Appellant's agreement not to compete with Appellee invalid in its entirety.

## II

The Court erred in applying the doctrine of severability to the agreement and enforcing it in part.

## III

The Court erred, even if the agreement is valid in whole or in part, in enforcing it by the extraordinary remedy of injunction."

In assignment of error number one, appellant insists that the non-competitive agreement of October 7, 1964, is invalid in its entirety for the following reasons:

(a) The consideration received by appellant was purely nominal.

(b) The prohibited territory is unreasonably broad because it is more than twice as large as that in which appellant worked for appellee.

(c) The five-year period of the agreement is grossly unreasonable when appellant called on his customers every six weeks while working for appellee.

(d) The scope of the activities prohibited is based on appellee's business rather than the work done by appellant.

(e) The proof shows that appellee does not need the protection of the agreement.

(f) Because it is unreasonable the agreement violates the Sherman Anti-Trust Act.

(g) The agreement is unduly harsh on appellant.

(h) The agreement is invalid because injurious to the public interest.

The general principle of validity of such non-competitive agreements has been upheld in this State in the following cases: Turner v. Abbott, 116 Tenn. 718, 94 S.W. 64, 6 L.R.A.,N.S., 892 (1906); Matthews v. Barnes, 155 Tenn. 110, 293 S.W. 993, 52 A.L.R. 1350 (1926); Arkansas Dailies, Inc. v. Dan, 36 Tenn.App. 663, 260 S.W.2d 200 (1953); Federated Mutual Implement and Hardware Ins. Co. v. Anderson, 49 Tenn. App. 124, 351 S.W.2d 411; Di Deeland, Inc. v. Colvin, 208 Tenn. 551, 555, 347 S.W.2d 483.

The general rule on this subject is set forth in Turner v. Abbott, supra, as follows:

"The general rule on this subject, deducible from the authorities, is that a contract in general restraint of trade, that is, not to engage in one's trade or profession at any place in the realm, is void as being contrary to public policy; but a contract not to engage in one's business or profession at a particular place, or for a period of time, is not invalid as being contrary to public policy, but such contracts will be upheld and enforced. 2 Parsons on Contracts, 748 et seq., note Z; 2 Pomeroy, Eq. Jur., sec. 934; 3 Pomeroy, Eq.Jur., sec. 1344, and note." Turner v. Abbott, supra, 116 Tenn. p. 725, 94 S.W. p. 66.

■ We are not impressed with the appellant's argument that his employment by appellee was not sufficient consideration to support the agreement in question here. It has been held that employment, even for an indefinite period of time, subject to termination at the option of the employer is sufficient consideration to support such a contract. Di Deeland, Inc. v. Colvin, supra.

■ Appellant insists that appellee has no trade secrets, no unique method of operation or confidential information about its business that appellant can use, no credit information which is not freely available in the trade and that veterinarians are listed in the yellow pages of every telephone directory and thus, there are no confidential customer lists.

A similar contention was made by a former employee in Arkansas Dailies, Inc. v. Dan, supra, and we can think of no better language to express our thinking in the instant case than that which was used by this Court in the Arkansas Dailies case:

> ''That may or may not be true depending on the tactics of the particular customer, but, if true, it is by no means a satisfactory answer, because any customer list may be discovered by following a salesman on his route; also, it is particular knowledge acquired by Dan by virtue of his employment rather than general knowledge and experience of the trade; and it is necessarily tied in with the question of good will of the business, because Dan during his employment was 'Mr. Good Will' himself to the customers, because he alone had all the dealings with them for his employer.'' Arkansas Dailies, Inc. v. Dan, supra, 36 Tenn.App. p. 673, 260 S.W.2d p. 204.

Also, in Arkansas Dailies, Inc. v. Dan, the Court further quoted with approval from Briggs v. Butler, 140 Ohio St. 499, 45 N.E.2d 757 as follows:

" 'A business is built upon the confidence of its customers and the employee gains acquaintance and sells the customers by using the good will of the employer. The employer's dealings with his customers through the employee gives the employee confidential knowledge that should not be divulged or used for his own benefit. It is by reason of this personal, if not confidential, relationship which the parties sustain that contracts to protect the employer by restriction of subsequent employment within reasonable limits of time and of space are permitted and sanctioned, and equity will enjoin the employee from competing in violation of his covenant.' Briggs v. Butler, 140 Ohio St. 499, 45 N.E.2d 757, 762. This is in accord with the case of Matthews v. Barnes, 155 Tenn. 110, 293 S.W. 993, 52 A.L.R. 1350, and cases referred to therein and the Court declined to make a distinction between professional and non-professional employment." Arkansas Dailies, Inc. v. Dan, supra, 36 Tenn.App. pp. 673, 674, 260 S.W.2d p. 204.

In Matthews v. Barnes, supra, the contract in restraint of competition was for a period of five years from date of dismissal or resignation, which is exactly the same period of the contract in the instant case, so we do not agree with appellant's contention that five years was an unreasonable length of time.

The most serious question, arises however, due to the fact that the contract covers an area in which appellant never represented appellee, but the facts of this case show that at the time the contract was made it could be reasonably anticipated that the remaining portion of

appellee's sales area, in which it was represented by Mr. Billingsley, might, at some period during appellant's employment, be assigned to him in the event of Mr. Billingsley's illness or temporary absence and, in addition to this fact, the frequent meetings at which both Billingsley and Ramsey discussed customers and mutual problems would result in the appellant gaining some information, by virtue of his employment, which could be used by him as a competitor after termination of such employment.

It has been held that the territorial scope of a restrictive covenant not to compete is reasonable, although it covers territory in which the employee at the time of the termination of the contract of employment had no business contact, if it could be reasonably anticipated that such territory might be within his coverage at some period during employment. Knapp v. S. Jarvis Adams Co. (6 Cir.), 135 F. 1008; Dyar Sales & Machinery Co. v. Bleiler, 106 Vt. 425, 175 A. 27.

Although, appellant never represented appellee in all of its sales area, it was reasonable to assume at the time the contract was executed, that he might be temporarily assigned to the territory covered by Billingsley, and our conclusion as to whether or not the territorial extent of the contract was reasonable must be determined by the situation existing at the date of contract.

By applying this rule, we hold that the size of the territory embraced therein did not render the contract invalid. Apparently by signing a contract covering the entire sales area of the appellee, the appellant considered it to be reasonable at the time.

Appellant strongly relies upon the comparatively recent case of Allright Auto Parks, Inc. v. Berry, 219 Tenn.

280, 409 S.W.2d 361 (1966), in which the Supreme Court held an agreement against competition to be unreasonable and void. In that case the area in which competition was prohibited by the contract consisted of forty-six cities throughout the United States and Canada, although the employee served as manager for the employer in only three of such cities.

In that case, however, the Court was careful to point out the following principles affecting decisions on such questions as those raised in the instant case:

1. It is the duty of the Court to construe contracts as of the date of their making instead of basing construction upon events subsequent to execution thereof.

2. There is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned and each case must stand or fall on its own merits.

In view of the fact that the area in question in Allright, supra, consisted of forty-six cities throughout the United States and Canada, and the employee had worked in only three of these cities, we do not think the reasoning applied in that case applies to the instant case.

Another case on which appellant relies is Welcome Wagon, Inc. v. Morris, 224 F.2d 693, in which the agreement against competition covered twelve hundred cities and the fact that the Fourth Circuit Court of Appeals considered such a territory to be so vast as to make the contract void, does not apply to the instant case, for the same reason that the decision in the instant case is not governed by the reasoning in Allright Auto Parks, Inc. v. Berry, supra.

In Knapp v. S. Jarvis Adams Co., supra, the Sixth Circuit Court of Appeals used the following language, which we consider to be applicable to the instant case:

"All such covenants do in some degree restrain trade. Whether the restraint is permissible by law depends upon the facts. The party who alleges that the restraint is such as to be in law obnoxious is bound to prove the facts which make it so. There can be no presumption, from the fact that there is some restraint in the instant case, that it is an unlawful one." Knapp v. S. Jarvis Adams Co., supra, 135 F. p. 1012.

█ For the foregoing reasons we conclude that the contract, in its entirety, was valid and does not violate the Sherman Anti-Trust Act. The first assignment of error is overruled.

Even if it should be conceded that the Chancellor applied the doctrine of severability by enforcing the contract in part, we do not reach that question, since we hold that the entire contract was valid at the time it was executed, although it later developed that enforcement of it over the entire area included therein was not necessary.

The fact that the Chancellor, in his discretion, determined that enforcement thereof was only necessary in the territory in which appellant had formerly represented appellee is not an error of which the appellant may be heard to complain, if it is any error at all. A partial enforcement of the prohibitory clause of the contract against him could not be prejudicial to him since the entire contract was valid, so we find no merit in the second assignment of error.

█ Neither do we find any merit in the third assignment of error in which appellant insists that the extra-

ordinary remedy of injunctive relief should not have been granted.

The question of whether or not an injunction should be granted in cases of this kind is one which rests largely in the discretion of the Chancellor. Morrison v. Searight, 63 Tenn. 476 (1874); Sanders v. Sanders, 40 Tenn.App. 20, 288 S.W.2d 473, 57 A.L.R.2d 932 (1955); Moss Tie Co. v. Hill, 191 Tenn. 582, 235 S.W.2d 587 (1951).

All of the assignments of error having been considered and overruled, the decree of the trial Court is affirmed and the case remanded for the enforcement of such decree.

The appellant, David L. Ramsey, will pay costs of this appeal.

Shriver, P. J., and Todd, J., concur.