**TELECOMMUNICATIONS, ENGINEERING SALES & SERVICE COMPANY, INC.**

v.

**SOUTHERN TELEPHONE SUPPLY COMPANY and John M. Smith.**

Civ. No. 3–74–17.

United States District Court,
E. D. Tennessee, N. D.

June 6, 1974.

Robert G. McDowell, Baker, Worthington, Crossley & Stansberry, Knoxville, Tenn., for plaintiff.

W. Keith McCord, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is a diversity action for injunctive relief against the individual defendant, John M. Smith (Smith), and monetary damages against the corporate defendant, Southern Telephone Supply Company (Southern), arising out of an alleged breach of an employment contract between plaintiff and Smith and an alleged inducement to breach the said contract on the part of Southern.

The theory upon which Telecommunications, Engineering Sales & Service Company, Inc. (TESSCO) seeks to enjoin its former employee, Smith, is that this defendant, in violation of the terms of his employment agreement, terminated his employment relationship without sufficient notice as was specified in the contract, and further that he violated and/or intends to violate the non-competition clause of the agreement by selling competitive sales items in his former territory to customers established while an employee of plaintiff.

As to Southern, plaintiff contends that it unlawfully enticed Smith away from plaintiff's employ and further induced him to breach his contract with plaintiff by (1) hiring an employee under contract with plaintiff; (2) causing Smith to sell competitive products in his former sales territory; and (3) causing Smith to utilize customers and businesses established by him while an employee of plaintiff. TESSCO relies upon T.C. A. §§ 47–15–113, 50–201 and 50–202 as a basis for its claim against Southern.

Defendant Smith denies that the agreement is enforceable and further denies that said contract is supported by consideration. He affirmatively asserts that the agreement was executed under duress and in the alternative that plaintiff consented to his resignation and/or that he was wrongfully forced to resign. Smith also contends that the nature and scope of Southern's business is compatible to and not competitive with plaintiff's business. Therefore, he denies liability for any alleged breach of contract and further denies he was induced to leave his former employment except by the act of plaintiff's own personnel.

Southern denies that it engaged in any activity or conduct violative of the Tennessee Code provisions relied upon by TESSCO. It asserts that no enforcement contract was in existence between Smith and plaintiff, but, in the alternative, says that if such did exist Southern's business is comparable to and not competitive with plaintiff's business activities.

The issues, as are stated in the order pursuant to pre-trial, are:

"(1) Did the defendant Smith breach an enforceable agreement with plaintiff; if so, is the plaintiff entitled to damages and injunctive relief?

"(2) Did the defendant Telephone Company induce Smith to violate any employment agreement with plaintiff; and if so, did plaintiff suffer damages as a direct and proximate result thereof?

"(3) If plaintiff is entitled to recover damages against Smith, what is the amount?

"(4) If plaintiff is entitled to recover damages against the Telephone Company, what is the amount?"

The evidence presented during the trial shows that defendant Smith joined TESSCO as a sales engineer in July or August, 1971. John Davis, General Manager of TESSCO, testified that he had known of Smith's expertise in the area of telephone engineering and had contacted defendant in 1970 regarding employment. Davis further stated that while Smith had little, if no experience in the sales area, he was hired as a sales engineer for the North Carolina and Georgia[1] territory since he had a good reputation among the present and potential customers in this territory.

At first none of the sales personnel were employed pursuant to a written contract. However, in either 1972 or 1973 General Electric (G.E.) cancelled its contract with plaintiff and offered all of TESSCO's salesmen positions of employment. Because of this, and because plaintiff had experienced some troubles with various employees leaving to join competitive companies, Davis submitted a proposed employment contract to the TESSCO salesmen, which contract contained, *inter alia*, a non-competition clause. Upon stringent objection, a revised form contract was drafted and presented to each salesman for negotiation.

As it relates to the employment contract under consideration, the evidence reflects that some time prior to March 1, 1973 a meeting was held in Raleigh, North Carolina, where a salary arrangement between Smith and TESSCO was discussed. Subsequent thereto a general meeting of all key sales personnel was held in Oak Ridge, Tennessee, at which

1. The State of Virginia was later added to this sales territory.

time employment contracts were presented to TESSCO salesmen for signature.[2] The agreement presented to and signed by defendant, Smith, provides:

## "EMPLOYMENT AGREEMENT

"This agreement is between the undersigned parties and shall stay in force until terminated upon forty-five (45) days written notice by either party or upon fifteen (15) days notice by TESSCO for violation of TESSCO's Company policies in force at that time. In consideration of TESSCO employing the employee for the compensation and benefits cited below and other considerations, the employee agrees that in the event the employee's employment is terminated at anytime or for any reason, the employee will not, directly or indirectly for himself or any other person or company, sell or offer for sale competitive items of TESSCO, within the employee's geographical sales or service territory or otherwise utilize the customers and business established while an employee of TESSCO for a period of eighteen (18) months after the termination of this agreement.

"Starting Rate: Base Salary yearly $18,000.00 plus Company Car.

"Promised Rate Change: Minimum Wages (Salary & Commission combined) from January 1, 1973 to March 1, 1974 date of $20,500.00 annually

"Position: Sales Engineer.

"Commission on TESSCO income from Sales 10 percent per policy

"Company provided plans __X__ Insurance

 __X__ Pension Plan

 _____ Profit Sharing

Expenses __X__ Full _____ Per Diem ____ rate per 7 day or week

"Other normal Salary progressions will be negotiated.

"Dated: March 1, 1973 Employee:

/s/ John M. Smith
Telecommunications Engineering, Sales & Service Co., Inc.

By: /s/ John S. Davis"

---

While there appears to be some conflicts in the testimony regarding what was actually discussed with each employee at the time the agreements were signed, the evidence fails to show that plaintiff, by and through Mr. Davis, coerced any of its salesmen, including Smith, into signing the employment agreement. Under the facts and circumstances presented, it appears that the agreements were presented in an effort on the part of TESSCO to minimize the possibility of losing key employees to competitive firms thereby seriously affecting future business dealings in their respective sales territories. Whether the agreement was offered on a "take-it-or-leave-it" basis is not determinative, for the evidence as a whole fails to support the assertion on the part of the defendants that coercive tactics were employed to force a contract upon Smith and his fellow salesmen.

In any event, Smith continued to work for TESSCO in his sales territory from March until November, 1973. During

---

2. Mr. Davis stated that all the contracts contained identical provisions to the one under consideration except that the salary of each employee varied.

that time, however, plaintiff lost its supply contracts with G.E. and ADC which had theretofore been major suppliers.

By letter of November 5, 1973, Smith tendered his notice of resignation to be effective "November 1973." (See Exhibit # 2) The evidence indicates that Smith, for reasons that the record fails to make entirely clear, had become dissatisfied with his employment with plaintiff. Whether it was because plaintiff had lost its contracts with G.E. and ADC or whether some personal factors entered into his decision to terminate need not be resolved by the Court. The controlling factor is that Smith's resignation was to be effective by the end of November, or some 25 days after the notice was tendered.

Mr. Davis stated that he did request the defendant to remain with TESSCO through December 1973 since he was a most valuable salesman and was irreplaceable in the North Carolina territory.[3] However, Smith did not acquiesce in this request, but to the contrary contracted to begin work for the defendant Southern on December 1, 1973.

The evidence further shows that Smith had instituted negotiations for employment with Southern prior to the date on which his resignation was tendered to TESSCO. It is clear, however, that Smith and not Southern first initiated these discussions.

Subsequent to November 5, 1973, but before December 1st, Davis discovered that Smith was negotiating with Southern. On November 20th, Davis telephoned Mr. J. O. Smith, President of Southern, and advised him that Smith was still under contract with TESSCO.

By letter of November 28, 1973, counsel for TESSCO further advised Southern of TESSCO's position regarding the Smith contract and informed Southern that it was counsel's opinion that the hiring of Smith would be in violation of the employment agreement as well as T. C.A. §§ 50–201, 50–202 and 47–15–113. This letter was not received until December 3, 1973. TESSCO's counsel was then advised by counsel of Southern that its action was not such as to give rise to any claim against Southern. (See Exhibit No. 6).

Mr. J. O. Smith testified that Southern in no way enticed, induced or initiated employment negotiations with John M. Smith but, to the contrary, it was at the insistence of this defendant that employment was discussed. He further stated that it was upon TESSCO's failure to forward a copy of its employment agreement with Smith and upon advice of Atlanta counsel that Southern proceeded to employ Smith. In any event, it appears that Southern did have notice of the alleged existence of an employment contract and the possible ramifications of hiring defendant, Smith, but nevertheless proceeded to employ him as a salesman.

The evidence further shows that the defendant Smith was hired to fill an opening in Southern's North Carolina sales territory, and that he was so hired because of his experience and contact with potential customers in that area. In fact, J. O. Smith testified that this defendant, as a salesman for Southern, services the same customers as he serviced while with TESSCO.[4]

As to the issue of whether TESSCO and Southern are competitors and

---

3. As previously indicated, the evidence clearly shows that Smith had established a good reputation with the North Carolina customers.

4. John M. Smith also stated on cross-examination that he has sold products similar to those sold by TESSCO to at least one client upon whom he called while he was at TESSCO, namely Citizens Telephone Company. He further testified that all the North Carolina independent telephone companies that he now calls upon were also customers of TESSCO before they became employed by Southern.

whether the defendant Smith is now selling competitive items to former TESSCO customers in violation of the terms of the agreement there exists somewhat of a difference of views. It is clear that in the early years of TESSCO's development much, if not all, of its business was in service and installation. However, as time progressed, TESSCO expanded ever increasingly into the sales area.

On the other hand, Southern, since its inception, has been exclusively a sales company, subcontracting any service and installation jobs it might have received.[5] Accordingly, defendants contend that these companies are not competitive but, to the contrary, are complementary.

▪ The Court also notes that manufacturers of telephone equipment place a number of items on the market to be sold through wholesale concerns such as those who are parties to this action. Some of these items may be competitive and some may not. Thus, the mere fact that both companies represent the same or similar manufacturers does not per se establish that their sales items are competitive.

In the case under consideration, however, the proof in this record shows that Southern and TESSCO not only represented the same or similar manufacturers but also offered for sale competitive items during the period here in issue.[6] Additionally, by the defendant's own testimony, Smith called on clients, as an employee for Southern, upon whom he had called as a salesman for TESSCO. Accordingly, the Court finds as a fact that not only were the two companies engaged in selling competitive products for the period under consideration but also that Smith solicited former customers of TESSCO in his sales position with Southern.

### Legal Conclusions

▪ It is the opinion of the Court, and the Court holds, that the employment agreement of March 1, 1973 between TESSCO and John M. Smith was, and is, a valid contract, supported by adequate consideration and executed without duress or coercion on the part of plaintiff. Deeland, Inc. v. Colvin, 208 Tenn. 551, 347 S.W.2d 483 (1961); Ramsey v. Mutual Supply Co., 58 Tenn. App. 164, 427 S.W.2d 849 (M.S.1968); compare, Associated Dairies, Inc. v. Ray Moss Farms, Inc., 205 Tenn. 268, 326 S. W.2d 458 (1959). Accordingly, the defenses asserted by both defendants for these issues are without merit.

A) Did defendant Smith breach the Employment Agreement?

As previously indicated, plaintiff asserts that Smith breached the contract in two ways, namely, (1) that he failed to give 45 days advance notice of termination and (2) that he subsequently engaged in competitive conduct in violation of the non-competition clause in the agreement.

▪ As to the first alleged breach plaintiff says that Smith's letter of November 5, 1973 advising that he would terminate at least by the end of November, or some 25 days after the date of the letter, constituted a defective notice of termination. Accordingly, it contends that Smith was still in plaintiff's employ at the time he was hired by Southern on December 1, 1973. We agree.

As to the second alleged breach, plaintiff contends that the non-competition clause is reasonable and therefore should

---

5. Various witnesses testified that Southern often utilizes companies like TESSCO to do its installation and service work.

6. The Court is well aware of the fact that TESSCO's entry into the sales area is of relatively recent vintage. However, the record clearly indicates that TESSCO began to sell competitive items before Smith's resignation and continued to sell such items for the 18 month period during which Smith was to refrain from competing with TESSCO.

be enforced by the Court. It further says that under the facts of this case, Smith should be enjoined from any future violation of the clause for a period of eighteen months.

█ It is the general rule in Tennessee that a covenant restraining future competition is valid if it is reasonable as to time and space. Turner v. Abbott, 116 Tenn. 718, 94 S.W. 64 (1906); Matthews v. Barnes, 155 Tenn. 110, 293 S. W. 993 (1926); Allright Auto Parks, Inc. v. Berry, 219 Tenn. 280, 409 S.W.2d 361 (1966); Arkansas Dailies, Inc. v. Dan, 36 Tenn.App. 663, 260 S.W.2d 200 (W.S.1953); Federated Mutual Implement & Hardware Insurance Company v. Anderson, 49 Tenn.App. 124, 351 S.W.2d 411 (E.S.1961); Fed. Mut. Impl. & Hdware Ins. Co. v. Johnson, 53 Tenn. App. 288, 382 S.W.2d 214 (E.S.1964); Ramsey v. Mutual Supply Co., 58 Tenn. App. 164, 427 S.W.2d 849 (M.S.1968). However, there is no inflexible formula for deciding the question of reasonableness, and each case must stand or fall on its own bottom. *Allright Auto Parks,* supra.

█ In determining that issue a Court may consider such factors as the threatened danger to the employer in the contract's absence, the economic hardship imposed on the employee, whether the covenant is inimical to the public interests, and the consideration supporting the agreement. *Allright Auto Parks,* supra. As these cases indicate, the basic policy underlying the enforcement of such provisions where they are reasonable is to protect the confidentiality of the employer-employee relationship on the one hand and the employer-customer relationship on the other.

██ It is the opinion of the Court that the noncompetition provisions contained in the contract here in issue are reasonable both as to time and space. We conclude that John M. Smith violated the terms of this agreement by joining the sales staff of Southern and by selling competitive items to his former TESSCO customers in North Carolina. It may be argued that since Smith had worked under the agreement for only a brief period of time such agreement should not be enforced. See Arkansas Dailies, Inc. v. Dan, 36 Tenn.App. 663, 260 S.W.2d 200 (1953). The evidence, however, clearly shows that Smith had been a sales representative for TESSCO in the North Carolina territory since 1971 and therefore had ample opportunity to and did establish rapport with TESSCO's customers there. These contentions are not, therefore, supported by the evidence and are without merit.

B) Is Plaintiff entitled to relief as against Southern?

█ It is the Court's opinion that there is no evidence in the record to support plaintiff's claim that Southern violated T.C.A. §§ 50–201 or 47–15–113. To the contrary, the evidence shows that Southern in no way enticed Smith away from his employ with TESSCO nor did they willfully induce him to breach his contract with plaintiff. See, Varno v. Tindall, 164 Tenn. 642, 51 S.W.2d 502 (1932); Emmco Ins. v. Beacon Mutual Ind., 204 Tenn. 540, 322 S.W.2d 226 (1959); Lichter v. Fulcher, 22 Tenn. App. 670, 125 S.W.2d 501 (E.S.1938); Swift v. Beaty, 39 Tenn.App. 292, 282 S.W.2d 655 (W.S.1954).

█ However, the preponderance of the evidence indicates that upon notification of the existence of a valid employment contract between TESSCO and Smith, Southern failed to take action as is required under T.C.A. § 50–202. This constituted a violation of the cited provision of the Tennessee Code. See, Morris v. Neville, 79 Tenn. 271 (1883); Jordon v. Lewis, 162 Tenn. 653, 39 S.W.2d 743 (1931).

C) What is the nature of the relief to which Plaintiff is entitled?

This is the most difficult issue in the case for the Court to determine in view of the manner in which the damage claims were presented at trial. Instead

of carefully articulating his measure of damages that would be supportable under applicable legal principles, counsel for plaintiff turned the matter over to TESSCO's accountants and computer technicians. As a result, much of the evidence presented in this regard appears highly speculative, and quite frankly leads the Court to believe that a great deal of the damages alleged, namely, $190,000.00, is unsupportable by the facts and the law.

TESSCO has attempted to categorize its damages in five areas, namely (1) Investment in Smith—$59,223.30; (2) TESSCO loss to Southern—$75,000.00; (3) TESSCO's loss on sales forecast by Smith—$82,728.00; (4) Costs of Replacing Smith in his sales territory—$34,500.00; (6) Cost of Replacement of Smith with him competing in the same sales territory—$34,500.00 plus $40,800.00 in commissions. Many of the items claimed are highly speculative and without support in law.

 Plaintiff is entitled to an injunction restraining the defendant Smith from further violating the terms of the noncompetition clause of the agreement, namely, the selling of competitive items to former TESSCO customers in his sales territory, for a period of eighteen months from date. In light of the severity of this remedy against Smith, we do not believe further relief against him would be justified under the facts.

 Plaintiff is further entitled to recover damages in the amount of $20,000.00 as against Southern for its violation of T.C.A. § 50–202. The record indicates that plaintiff is entitled to some damages, but how much it is difficult, if not impossible, to determine from a mathematical standpoint. Accordingly, the Court must use its best judgment as does a jury in a case of this character in fixing the damages. We believe that under all the circumstances, $20,000.00 would be fair to all parties.