BAIRD *v.* SMITH.*

(*Knoxville.*   September Term, 1913.)

**CONTRACTS.**   Lessening competition.   Sale of business.

The provision of a contract, by which one sells his stock of goods
and the fixtures of his store, that he will not in that town for
five years engage in business in competition with the buyer,
does not "tend to lessen free and full competition" in the sale
of articles that had become a part of the mass of the property
in the State, in violation of Acts 1903, ch. 140, sec. 1; the mean-
ing of "competition," or of undue or unreasonable restraint of
trade, under the common law, not being changed by the statute.
(*Post, pp.* 413, 414.)

Cases cited and approved:   U. S. v. American Tobacco Co., 221 U.
S., 171, 174; Jackson v. Byrnes, 103 Tenn., 698; Bradford v.
Furniture Co., 115 Tenn., 610; Turner v. Abbott, 116 Tenn., 725;
Smith v. Webb (Ala.), 58 South., 913; State v. Witherspoon,
115 Tenn., 138; State, ex rel., v. Woolen Mills, 115 Tenn., 267;
Standard Oil Co. v. State, 117 Tenn., 642; Standard Oil Co. v.
Tenn., 217 U. S., 413

---

FROM CAMPBELL.

---

Appeal from Chancery Court, Campbell County.—
HUGH G. KYLE, Chancellor.

H. K. TRAMMELL, for appellant.

---

*As to the validity of an agreement in restraint of trade or pro-
fession as affected by its territorial scope, see note in 24 L. R. A.
(N. S.), 913.   And on the question of the validity of contracts in
restraint of trade without limitation of place, see note in 22 L. R. A.,
673.

Baird v. Smith.

JOHN JENNINGS, JR., for appellee.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

On May 9, 1910, the parties above named entered into a written contract whereby Smith sold to Baird the entire stock of merchandise and fixtures located in a certain storehouse in Jellico, Tenn., known as the "Racket Store." The contract contains the terms of sale (which are not material to be set out here), and then proceeds as follows:

"Further considerations of this agreement are as follows:

"The said W. G. Smith binds himself in the sum of one thousand dollars ($1,000), to be paid to the said M. E. Baird, due only under the following conditions: Should the said W. G. Smith enter into any business other than the business which he is now connected with, viz., the Smith Shoe & Clothing Company, in the town of Jellico, for a period of five (5) years, in any line of merchandise that would be considered in competition to the store sold to M. E. Baird, then the said W. G. Smith agrees to pay one thousand dollars ($1,000) to said M. E. Baird for this privilege."

The contract was in duplicate, executed in the presence of two witnesses, and signed by the respective parties. Baird paid the consideration money, entered into possession of the stock and fixtures and since the date of the contract has been doing business at the "Racket Store." On November 25, 1912, he brought

this suit, seeking a decree against Smith for $1,000 and interest upon an alleged breach of the above-quoted portion of the contract.

The chancellor decreed as prayed in the bill, and Smith appealed, and has assigned errors in this court.

It is the opinion of the majority of the court (in which the writer, however, does not concur) that the contract was breached by Smith, and that so far as this branch of the case is concerned there was no error in the decree. This branch of the case has been disposed of in an oral opinion and need not be further noticed.

The next and only remaining question arises upon Smith's insistence that the chancellor should have held the clause quoted from the contract void, because it was a contract tending to lessen full and free competition in the sale of merchandise, within the meaning of chapter 140, Acts of 1903. It is urged that the lessening or restraint of competition need not, under the act, be unreasonable, as it must have been at common law, in order to invalidate the contract, but, on the contrary, under the act a mere tendency to lessen full and free competition invalidates the contract.

An analysis of section 1 of the act in question reveals a twofold purpose in the passage of that section.

The first was to preserve full and free competition in the sale of articles of merchandise which had become a part of the mass of property in the State.

The second was to preserve full and free competition in the sale and manufacture of articles of domestic

growth and domestic raw material, and to prevent all combinations tending to affect the price or cost thereof to the consumer or producer.

With the second of these purposes we are not concerned in the present case. It is the first purpose of the act, and how far, if at all, it has changed the rules of the common law with respect to contracts of this character, that we must consider in the present case.

We think the only change in the common law the statute has wrought is accomplished by the use of the words "tend to" in the first section of the act. The test at the common law had been whether, in point of fact, the contract or other matter in question did in fact work an undue or unreasonable restraint upon full and free competition; the test under the statute is whether it "tends to" do so. The statute works no change in the meaning of the word "competition" as it was understood at common law, nor does it change what was at common law undue or unreasonable restraint of trade, or such restraint of the synonymous term, "full and free competition."

So the question before us narrows down to the point of determining whether the contract in suit, or that part of it quoted herein, tended within the meaning of the first section of the act to lessen full and free competition, and therefore contravened the public policy underlying the act.

Under the common law in force in this State prior to any legislation on the subject, only such combinations, contracts, or agreements as operated to the prej-

udice of the public interest by unduly obstructing the due course of trade, or which, either because of their inherent nature or effect, or because of the evident purpose of the act, injuriously restricted trade, were denounced as void on grounds of public policy.

Such was the holding of the supreme court of the United States in *U. S.* v. *American Tobacco Co.,* 221 U. S., 171, 174, 31 Sup. Ct., 632, 55 L. Ed., 693, 694, where it was said that the statute under consideration there should be *so interpreted as not to restrain the power to make* "normal and usual contracts to further trade by resorting to all normal methods, whether by agreement or otherwise, to accomplish such purpose." And so we think the act in question in the present case must be read and interpreted. Every contract by which one person secures to himself the ownership, dominion over, and right to fix a price on or sell, or to keep for his use, a particular portion of the common mass of merchandise in the State, is to that extent an exclusion of the like rights in all others over that property during his ownership, and such person, if under no public duty or contract to part with the merchandise, may keep and use it, or sell it at such price as he sees fit. He is free to do as he likes in respect to it; and so was the vendor from whom he acquired title, if similarly circumstanced.

And, as we see the present case, Smith, who had gathered into his "Racket Store" a part of the common mass of merchandise in the State, and who by sale of merchandise of like character in that place had built

up a good name or good will for his business in that particular class of merchandise, had a property right, not only in the merchandise and fixtures sold to Baird, but also in the good will or name of the business. The contract between Smith and Baird does not expressly convey the good will of the business; but, notwithstanding this fact, we think Smith's right was clear to sell the stock of merchandise and fixtures, and as an incident of his ownership of the stock and the business conducted by him, and as an element entering into and forming a part of the value thereof, to bind himself not to engage in business in competition with Baird in the town of Jellico for the period of time named in the contract. *Jackson* v. *Byrnes,* 103 Tenn., 698, 54 S. W., 984; *Bradford* v. *Furniture Co.,* 115 Tenn., 610, 92 S. W., 1104, 9 L. R. A. (N. S.), 979; *Turner* v. *Abbott,* 116 Tenn., 725, 94 S. W., 64, 6 L. R. A. (N. S.), 892, 8 Ann. Cas., 150; *Smith* v. *Webb* (Ala.), 58 South., 913, 40 L. R. A. (N. S.), 1192.

We do not think the contract tended to restrain full and free competition within the meaning of the act of 1903. Our case of *Turner* v. *Abbott,* supra, is controlling authority in the present case.

The act of 1903, upon other phases than that involved in the present case has been considered by this court in *State* v. *Witherspoon,* 115 Tenn., 138, 90 S. W., 852. *State, ex rel.,* v. *Woolen Mills,* 115 Tenn., 267, 89 S. W., 741, 2 L. R. A. (N. S.), 493, 112 Am. St. Rep., 825; *Standard Oil Co.* v. *State,* 117 Tenn., 642, 100 S. W., 705, 10 L. R. A. (N. S.), 1015; *State, ex rel.,* v.

*Standard Oil Co.,* 120 Tenn., 138, 110 S. W., 565.   And the act is considered by the supreme court of the United States in *Standard Oil Co.* v. *Tenn.,* 217 U. S., 413, 30 Sup. Ct., 543, 54 L. Ed., 817.

It results, from the views expressed, that the decree of the chancellor must be affirmed, with costs.