## C. G. MATTHEWS et al. v. CLIFFORD D. BARNES.*

### (Nashville.   December Term, 1926.)

Opinion filed, February 26, 1927.

AGENCY. Employment. Contract. Enforcement.

   A Court of Equity will enforce a contract made for a period of five years, confined to a single county of the State, to refrain from employment by another, in competition, with party contracted with, where such employment will require the disclosure of information acquired by virtue of original employment, vital and important in the successful conduct of a particular business, probably damaging, if disclosed; and it is immaterial whether the employment is professional or nonprofessional. (Post, p. 113.)

Citing: 9 A. L. R. 1456, 1468. Turner v. Abbott, 116 Tenn., 718; Strolowitz v. Roseman, 263 Pa., 588; Fred A. H. Garlichs Agency Co. v. Anderson (Mo.), 226 S. W., 978; Fitch v. Dewes (Eng.), 2 A. C., 158; Baird v. Smith, 128 Tenn., 416; Chicago Portrait Company v. C. A. Talley, M. S.; Lincoln Fire Insurance Co. v. P. R. Beaman, C. A. December 6, 1924.

Citing and distinguishing: Simms v. Burnette (Fla.), 15 Ann. Cas., 690; Mason v. Provident Clothing Co. etc. (Eng.), Ann. Cas., 1914 a491; Herbert Morris v. Saxelby (Eng.), Ann. Cas., 1916D, 537; Samuels Stores v. Abrams (Conn.), 9 A. L. R., 1450; Menter Co. v. Brock (Minn.), 20 A. L. R., 857; Clark Paper & Manfg. Co. v. Stenacher (N. Y.), 29 A. L. R. 1325; Osius v. Hinchman (Mich.), 16 L. R. A. (N. S.), 393; Wm. Rogers Mfg. Co. v. Rogers (Conn.), 7 L. R. A., 779.

---

*Headnote 1.  Injunctions, 32 C. J., section 340.

---

### FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. to Court of Appeals and by Certiorari to Supreme Court. —HON. JAMES B. NEWMAN, Chancellor.

SETH M. WALKER and WM. WALLER, for appellants.

CHAS. L. CORNELIUS and EDW. J. WALSH, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

By the bill filed herein the complainants seek to enjoin the defendant from entering the employ of one of its competitors in the City of Nashville, in violation of his written agreement not to do so.

The Chancellor granted the relief prayed for, and upon appeal the Court of Appeals reversed the decree of the Chancellor and dismissed the bill.

The facts, as found by the Court of Appeals, are as follows:

"On July 6, 1923, the appellees (complainants) entered into a written contract with the appellant (defendant), which is as follows:

" 'Whereas, I have this day become employed by the Rent-A-Ford Company of Nashville, Tennessee, and in pursuance of such employment will become familiar with the nature of the business of the Rent-A-Ford Company, their business secrets, and methods of doing business; and

" 'Whereas, I am being employed by the said Rent-A-Ford Company upon the express condition that I will under no circumstances divulge information acquired by me while in pursuance of said employment concerning the methods, business secrets, etc.

" 'In consideration of the employment hereto or hereafter entered into by me of the Rent-A-Ford Company, I do hereby expressly agree that I will not divulge to any other person or persons or make use of myself, eith-

er directly or indirectly, the business secrets and special methods or general methods of the Rent-A-Ford Company and that in the event of discharge or voluntary resignation, I will not enter into a similar business in competition with the said Rent-A-Ford Company in Davidson county, and that I will not make known or divulge any information acquired while in the employment of the Rent-A-Ford Company, either directly or indirectly, to any other person or persons or firms or corporations in competition with, or contemplated competition with the said Rent-A-Ford Company, in the County of Davidson, Tennessee, and that I will not become employed by or aid, or counsel, directly or indirectly any person, firms or corporations in competition with the said Rent-A-Ford Company in the County of Davidson, State of Tennessee, for a period of five (5) years from the date of such dismissal or resignation.''

''The evidence shows that the service of appellant to the appellees began a few weeks before the date of this instrument. He remained in this employment until March, 1925. The appellees are engaged in the business of renting out automobiles to customers, furnishing oil and gasoline, the charge being made on a basis of the mileage covered by the customer in the use of the car. The duties of the appellant consisted of having charge of the counter at appellees' place of business on Eighth Avenue North, in Nashville, Tennessee, between seven o'clock P. M. and seven o'clock A. M. waiting on the customers, ascertaining their solvency, renting automobiles to them and collecting the compensation for such services. He was in charge of the office during said hours and had access to the books and list of contracts of the customers of the appellees. The appellees kept a careful list of all customers, with information concerning

their solvency and reliability. They testified that this list was very valuable and that they never would have employed appellant without the agreement now complained of. Shortly after appellant's employment ceased he entered the service of the Rent-A-Car Company, a competitor of the appellees. It is undisputed that the appellees, if called by another concern in Nashville, doing a similar business, will advise that concern whether or not they had previously rented cars to a particular person, whether or not the person was to be depended upon to pay and return the car; and that such information was frequently asked for and given by one concern to another. It is not charged that the appellant copied a list of the customers of appellees, but it is insisted that because the list of customers, who used automobiles for hire and paid promptly for such use, was a valuable list to the appellees and it would injure their business if the list were given to competitors; and also because a certain method of replacing automobiles before they became old and an arrangement for getting in touch with prospective customers were valuable as trade secrets, the contract of appellees with appellant was valid and enforcible.''

The question involved is reduced to this: Will a court of equity enforce such a contract where no specific injury is shown?

This question is fully annotated in 9 A. L. R. beginning on page 1456. On page 1468 the annotator says:

''It is clear that if the nature of the employment is such as will bring the employee in personal contact with the patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons and customers, enabling him, by

155 Tenn.—8.

engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons or customers of his former employer, and thereby gain an unfair advantage, equity will interfere in behalf of the employer and restrain the breach of a negative covenant not to engage in such competing business, either for himself or for another, providing the covenant does not offend against the rule that as to the time during which the restraint is imposed, or as to the territory it embraces, it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer.''

In the note more than sixty cases, including the case of *Turner* v. *Abbott,* 116 Tenn., 718, are cited sustaining the text.

The following cases, subsequently decided, also support the text, to-wit: *Strolowitz* v. *Roseman,* 263 Pa., 588; *Fred A. H. Garlichs Agency Co.,* v. *Anderson* (Mo.), 226 S. W., 978; *Fitch* v. *Dewes* (Eng.), 2 A. C., 158.

In *Turner* v. *Abbott,* supra, it appears that Abbott had recently graduated from a dental school, but was inexperienced. He was employed by Dr. Turner, a practicing dentist in Union City, as his assistant, and agreed that when his employment terminated he would not engage in the practice of dentistry in that city. By mutual consent the employment was terminated in about seven months, and Abbott formed a partnership with another dentist in Union City, whereupon Turner filed an injunction bill, which was sustained by the chancellor, and upon appeal was affirmed by this court. In concluding the opinion in that case this court said:

''Our examination of the authorities has not confirmed the suggestion of learned counsel that a contract inhibiting future professional competition is not valid, unless

at the time the party inhibited has an established practice or professional good will or a mercantile business which may be made the subject of sale. On the contrary, we find numerous cases, English and American, where a clerk or employee, teacher or salesman, on entering the service of a tradesman, manufacturer, or professional man, has been bound by a lawful contract not to engage in a competitive business with his employer. In the present case, the defendant was paid for his services a salary of $100 per month, which was large compensation to a young man who had just graduated, and under the authorities it was perfectly competent for the parties to make the contract in question which only prohibits the future competition in Union City and vicinity. We think this contract was reasonable and not oppressive; nor was it in any way detrimental to the interests of the public."

The decision in that case was later approved in *Baird* v. *Smith*, 128 Tenn., 416.

In the case of *Chicago Portrait Company* v. *C. A. Talley,* Davidson Equity, Talley entered the employ of complainant as district manager for Tennessee, his duties being to employ salesmen, supervise their work, and forward orders obtained by such salesmen. He agreed in writing that he would not accept similar employment from a competitor of complainant in Tennessee for a period of one year after the termination of his employment with complainant. He did not come in personal contact with complainant's customers, and it did not appear that he had access to all of the files and list of customers of complainant. Upon the termination of his contract he accepted a similar position with one of complainant's competitors. The Court of Civil Appeals in a very full opinion, in which the authorities were re-

veiwed, held the contract reasonable and enforcible. This court, upon a petition for *certiorari,* approved the opinion of that court upon this question in a written memorandum filed.

In *Lincoln Fire Insurance Co.* v. *P. R. Beaman,* Davidson Equity, decided by the Court of Civil Appeals December the 6th, 1924, Beaman was employed as assistant superintendent in Nashville upon an agreement that he would not become a competitor in Nashville for one year after the termination of his employment. The contract was held valid.

The only distinction between that case and the Chicago Portrait case was that in the former case it was alleged that Beaman was soliciting and procuring complainant's customers to patronize his new employer. The case was expressly decided upon the authority of *Turner* v. *Abbott,* supra, and this court denied the petition for *certiorari.*

The Court of Appeals undertook to distinguish this case from that of *Turner* v. *Abbott,* supra, upon the ground that one involved non-professional and the other professional employment. Upon principle we see no difference and find no cases undertaking to make such a distinction. The competition is as injurious in one case as the other.

In view of the nature of the employment in this cause, and what we conceive to be the great weight of authority supporting the reasonableness of such a contract, we do not feel justified in overruling the case of *Turner* v. *Abbott,* supra. While it would be difficult to prove specific injury in a case like this we can well see how injury might result, and realizing in advance that such competition would be injurious the parties solemnly contracted against it.

We will refer briefly to the cases cited in opposition to the views hereinabove expressed.

In *Simms* v. *Burnette* (Fla.), 15 Ann. Cas., 690, it was held that, in the absence of some special equity involving good will, peculiar intellectual or other skill or capacity, secret process of business, or other recognized ground for relief, a court of equity will not enjoin the breach of a contract by a bookkeeper not to engage in the liquor business in the State. The plaintiff was a wholesale liquor dealer in Jacksonville.

In *Mason* v. *Provident Clothing, etc., Co.* (Eng.), Ann. Cas., 1914 A, 491, it was held that a contract for the employment of a canvasser by a clothing and supply company having branches all over England, described in the contract as carrying on business on the check and credit system "at London in the county of Middlesex (amongst other places)," whereby the employee agreed that he would not within three years after the termination of the employment be in the employ of any person, firm, or company carrying on or engaged in a business the same as or similar to that of the company, or assist any person employed or assisting in any such business, "within twenty-five mile of London aforesaid where the company carry on business," was wider than was reasonably necessary for the employer's protection and is void.

The employee was attached to the employer's Islington branch office and was employed exclusively within that district.

Viscount Haldane, L. C., in the course of his opinion, said:

"Had they been content with asking him to bind himself not to canvass within the area where he had actually assisted in building up the goodwill of their business, or in an area restricted to places where the knowledge which

he had acquired in his employment could obviously have been used to their prejudice, they might have secured a right to restrain him within these limits.''

In *Herbert Morris* v. *Saxelby* (Eng.), Ann. Cas., 1916D, 537, it was held that a contract by a person employed as draftsman and engineer that he would not engage as principal or agent in a business similar to that of his employer any where in the United Kingdom within seven years after the termination of the employment is unreasonable and void.

In *The Samuel Stores* v. *Abrams* (Conn.), 9 A. L. R., 1450, the court said:

''The defendant's services and the plaintiff's business are not of a character to involve the acquisition of special business secrets of the plaintiff by the defendant. The agreement relates merely to services in a local retail business, and primarily aims to restrict competition.

''The plaintiff conducts a local retail clothing business in which the defendant was employed as manager. The situation of manager could have been filled by any person of sufficient business capacity.

''The clothing business may be entered upon by anyone who desires to enter it, and whether the defendant opened a competitive store or another did so was immaterial to the plaintiff, except that the defendant, having acquaintance and knowledge of the plaintiff's customers, might solicit their trade.

''The restriction in question provides, in substance, that in any city where the plaintiff carries on its business the defendant shall not directly or indirectly connect himself with any firm engaged in business similar to that of the plaintiff, which would compete with the business of the plaintiff, for five years after his employment with the plaintiff ceases.

"This restriction, binding for that period and relating to every city in which the plaintiff has established a branch store, is not reasonably necessary for the fair protection of the plaintiff's business. It covers a number of cities in which the defendant, from his employment in one city, could have had no acquaintance with the local customers."

In *Menter Co.* v. *Brock* (Minn.), 20 A. L. R., 857, the court entertained the view that the contract was unilateral in character, and held that there was no evidence that the employee, in the position of manager, came in contact with the customers of the plaintiff.

In *Clark Paper & Mfg. Co.* v. *Stenacher* (N. Y.), 29 A. L. R., 1325, the court held that an injunction would not lie to prevent an employee from breaking his contract not to enter rival employment during the term of employment, nor for a period of eight years from the expiration thereof, where the contract of employment is for a term to be mutually agreed upon, which is never fixed. In other words, the contract was not complete.

We have no fault to find with these cases, but neither of them deal with facts similar to those here involved, and are not, therefore, in point.

We find a few cases in point where injunctive relief was denied.

In *Osius* v. *Hinchman* (Mich.), 16 L. R. A. (N. S.), 393, the court refused to restrain a dentist from engaging in a competing business, in violation of a covenant with his former employer not to do so, it not appearing that the employer would suffer irreparable loss on account of the breach, or that his remedy at law was inadequate, there being no showing that the employer's damages would not be easily ascertainable, or that the employee's place could not be readily filled.

It will be noted that this case is in direct conflict with the decision of this court in *Turner* v. *Abbott*, supra.

In *Wm. Rogers Mfg. Co.* v. *Rogers* (Conn.), 7 L. R. A., 779, the court refused to restrain an employee of a silver plating company from engaging in a competing business in violation of his covenant. It is pointed out that the employer had not shown any facts which would bring the case within the rule that would require an employee to be enjoined from disclosing business secrets.

We are not unmindful of the fact that the modern trend of the courts is to construe such contracts favorably to the employee, and there is good reason for so doing. But here the complainants were engaged in a practically new enterprise; they were operating under a system which they desired to keep secret from their competitors; they likewise had a valuable list of customers which they did not want disclosed to their competitors. The defendant, by virtue of his employment, became thoroughly familiar with complainants' system and well acquainted with their customers, and it is not difficult to understand how complainants might be injured by him engaging in a competitive business.

For the reasons indicated, the decree of the Court of Appeals will be reversed and that of the chancellor affirmed.