**The CARBORUNDUM COMPANY,
Plaintiff,**

v.

**Gerald Irwin WILLIAMS, Defendant.**

**No. CIV–2–78–6.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

May 9, 1978.

Bernard E. Bernstein, and L. Caesar Stair, III, Knoxville, Tenn., for plaintiff.

Thomas J. Seeley, Jr., and Robert H. Stromberg, Erwin, Tenn., Edward J. Sites, James C. McConnon, and Louis Virell, Philadelphia, Pa., George W. Morton, Jr., Knoxville, Tenn., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action for, *inter alia*, injunctive relief, to restrain the defendant Mr. Gerald Irwin Williams from breaching a contract with a predecessor of the plaintiff The Carborundum Company (Carborundum), proscribing Mr. Williams' divulgence of Carborundum's trade secrets or other confidential information. Carborundum is a Delaware corporation, not incorporated by Tennessee, with its principal place of business in New York. Mr. Williams is a citizen of Tennessee. The matter in controversy exceeds the value of $10,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(a)(1), (c). The Court received evidence on Carborundum's motion for a preliminary injunction after notice to Mr. Williams, Rule 65(a), Federal Rules of Civil Procedure, on April 17, 1978.

By contract of January 31, 1961, Mr. Williams agreed not to divulge without his employer's consent any

> * * * information as to the research, development, manufacturing and business activities, procedures, results of operation * * * or other affairs of [his employer] * * * which * * * come into my possession * * * to any firm, person or corporation * * * at any time * * * subsequent to my employment by [my employer]. * * *

He ceased employment with Carborundum on October 14, 1977, at which time he was a senior engineer of such concern at its plant in New Carlisle, Indiana, where Carborundum had developed a submerged electrode furnace ("SEF") for the manufacture of ceramic fiber and ceramic fiber products.

Mr. Williams served his former employer, among other ways, as a member of a development team concerned with this project; worked with Carborundum's contractors fabricating parts for the new furnace; acted as clerk receiving parts and equipment therefor; acquired knowledge of the details of the construction and operation of the improved furnace; had full access to blueprints, drawings, vendor-lists, and other documents relating to this project; was privy to the problems encountered and resolved by Carborundum in rendering the furnace operational; supervised such operations, "de-bugging" its operations and logging and studying results; assisted in writing operating procedures for it; and trained other employees in operations of the "SEF" both at home and abroad. Furthermore, when litigation was commenced between Carborundum and Combustion Engineering, Inc. (CE), which was entering the field of manufacturing ceramic fiber products, and another former employee of Carborundum, Mr. Williams was consulted by Carborundum's attorneys in preparation for trial.

Being dissatisfied with his chance of further significant promotion by Carborundum, Mr. Williams accepted employment with CE which was opening a new plant for the manufacture of ceramic fiber in Erwin, Tennessee and became manager of that plant. CE is utilizing also an "SEF"-type furnace at such plant, and Mr. Williams, if he breaches his foregoing agreement with a predecessor of Carborundum, is in a position to provide somewhat instantaneous answers to developmental and operational questions which it required Carborundum some 5 years to perfect at a cost of more than $1,000,000. As in *William B. Tanner Co., Inc. v. Taylor*, C.A.Tenn. (1974), 530 S.W.2d

**40**

517, certiorari denied (1974),* Mr. Williams evidently quit Carborundum " * * * to make more money from and * * * to become an official of plaintiff's competitor. The trade secrets [or confidential information] he held were a strong factor in defendant's getting the better job. * * * " *Ibid.*, 530 S.W.2d at 523[5].

A working design of an "SEF" for purposes of producing ceramic fiber is not available on the market and could not be developed without the expenditure of a great deal of money and time. Obviously, such a development by CE or another entity can be expedited considerably with the assistance of a person with the specific experience of Mr. Williams. Among the difficult problem-areas connected with a "SEF"-type furnace are its water-cooling system(s), the calculation of proper heat-flow, the variations of power-input for use with different materials, the design and assembly of its electrodes, the power-arrangement necessary for the maintenance of a continuous stream of molten materials, its orifice-design, and its mechanism for blowing fibers.

Carborundum undertook to insure the confidentiality of the details of these and other aspects of the "SEF"; restricted access to the pertinent blueprints and drawings of this device to its employees demonstrating a "need-to-know"; and restricted the delivery of plans of its various parts to vendors and consultants concerned with a particular part or particular parts thereof. These details were trade secrets or protected confidential information of Carborundum.

A situation may be visualized with facility in which Mr. Williams, the manager of a plant competing with this particular activity of Carborundum, would find his new employer stymied in its effort to develop an "SEF" because of some unresolved problem which had been confronted and to which Mr. Williams had the answer because of his participation at Carborundum's plant where the same problem was resolved. With his new employer thus stymied in its effort to become operational as expeditiously as possible and its employee armed with the answer drawing compensation as its chief plant official, it is violative of the general course of nature and the natural habits of life to conclude that this dilemma would bode for good. For Mr. Williams to continue under those circumstances to withhold from CE the information he had gained from Carborundum would require an exhibition of the highest personal and industrial integrity.

This diversity action is governed by Tennessee rules of decision, 28 U.S.C. § 1652, and Tennessee courts appear to enforce contracts growing out of the employment relation more favorably to employers than is done in some other jurisdictions. Its courts of equity will enforce a reasonable covenant not-to-compete even where no specific injury is shown. *Matthews v. Barnes* (1927), 155 Tenn. 110, 120, 293 S.W. 993, 52 A.L.R. 1350, reaffirming *Turner v. Abbott* (1906), 116 Tenn. 718, 94 S.W. 64, and *Baird v. Smith* (1913), 128 Tenn. 410, 161 S.W. 492. They will also enjoin the divulgence or use of a trade secret or confidential information to the injury of a former employer. *The Kelly Mfg. Co. v. Brower*, C.A.Tenn. (1925), 1 Tenn.App. 428, 434–436[3], [4], [5], certiorari denied (1925), *Hall v. Britton*, C.A. Tenn. (1953), 41 Tenn.App. 72, 87[5], [6], 87–88[8, 9], 292 S.W.2d 524, certiorari denied (1954); *William B. Tanner Co., Inc. v. Taylor, supra*, 530 S.W.2d at 523[4].

*Matthews v. Barnes, supra*, from the Tennessee Supreme Court, the most authoritative of the foregoing decisions cited immediately above, alluded to the facts that a former employee's new employment with a competitor of his original employer would require the disclosure of information the employee had acquired by virtue of his original employment which was vital and important in his former employer's successful conduct of its particular business endeavor

---

* The plaintiff, by brief, mistakenly alluded to this decision as that of the Tennessee Supreme Court.

and which was probably damaging to the former employer if such information was disclosed, as a basis for enforcing the employee's covenant not-to-compete with his former employer. The late Mr. Justice McKinney commented for the Court, *inter alia:*

    \*     \*     \*     \*     \*     \*

> We are not unmindful of the fact that the modern trend of the courts is to construe such contracts favorably to the employee, and there is good reason for so doing. But here the complainants were engaged in a practically new enterprise; they were operating under a system which they desired to keep secret from their competitors; they likewise had a valuable list of customers which they did not want disclosed to their competitors. The defendant, by virtue of his employment, became thoroughly familiar with complainants' system and well acquainted with their customers, and it is not difficult to understand how complainants might be injured by him [sic: his] engaging in a competitive business.

    \*     \*     \*     \*     \*     \*

The decision of the Court of Appeals was reversed in that situation, and the equity judge's granting of an injunction, precluding the defendant from entering the employ of the complainants' competitor, was affirmed. *Ibid.*, 155 Tenn. at 120, 293 S.W. at 996.

With remarkable parallelism, Carborundum was engaged in a new and improved method of manufacturing and was operating under a system its personnel desired to keep secret from everyone, especially existing or potential competitors. Mr. Williams, by virtue of his employment and his special connection with the new system at Carborundum, became thoroughly familiar with its system and left its employment for the specific purpose of performing similar functions for its competitor. This Court, also, finds it is not difficult to understand how Carborundum might be injured by Mr. Williams' engaging in a competing operation.

In both *Brower* and *Taylor, supra,* the former employee had taken affirmative actions which violated his duty not to divulge trade secrets or other confidential information he had acquired in his original employment. In *Britton, supra,* however, as here, the former employee denied he had disclosed or threatened to disclose such data. Although the equity judge was affirmed in discrediting the former employee's testimony in *Britton,* the late Judge Avery made it clear nonetheless: " \* \* \* In a suit involving a trade secret [or confidential information] it is not always necessary to reveal the secret [or information] in order to substantiate the contention of a party, where the secrets [or information] are known to the parties because of their former confidential relationship." *Hall v. Britton, supra,* 41 Tenn.App. at 87[6], 292 S.W.2d at 531.

These views of the applicable law by the courts of Tennessee leave only the questions, (a) whether Carborundum has shown a strong or substantial likelihood or probability of success on the merits and (b) whether the public interest would be served by issuing a preliminary injunction. *Cf. Mason County Medical Ass'n v. Knebel,* C.A. 6th (1977), 563 F.2d 256, 261[2, 3], and decisions cited therein. The plaintiff's contentions and proof satisfy the first of those additional requirements; Carborundum was not required to establish its right to a preliminary injunction " \* \* \* wholly without doubt. \* \* \*" *Sternberg v. Cheker Oil, et al.,* C.A. 6th (1978), 573 F.2d 921, 924. And, the public interest will be served by the issuance of a preliminary injunction under these circumstances, because the " \* \* \* law favors the right of parties to freely contract, \* \* \*" *National Mill Supply Co. v. State ex rel. Morton* (1937), 211 Ind. 243, 6 N.E.2d 543, 109 A.L.R. 1101, 1105 (headnote 2), and the sanctity of contracts must be preserved.

For the pendency of this litigation, the defendant Mr. Gerald Irwin Williams will not divulge to any personnel of Combustion Engineering, Inc. or to anyone else, absent the consent of an authorized official of The Carborundum Company, any information as to the research, development, procedures, or

results of operation relating to the submerged electrode furnace for the manufacture of ceramic fiber and ceramic fiber products which was researched and developed by The Carborundum Company on and prior to October 14, 1977, and which information came into the possession of Mr. Williams on and prior to that date by virtue of the former employment of Mr. Williams with The Carborundum Company as such information relates to the water-cooling system(s) of such machine; the calculations of proper heat-flow into or in connection with the operation of such machine; the variations of power-input for use with different materials in such machine; the design and assembly of the electrodes of such machine; the power-arrangement of such machine necessary for the maintenance therein or in connection therewith of a continuous stream of molten materials; the design of the orifice(s) of such machine; and the mechanism of, or in connection with, blowing of fibers in relation thereto.

Such preliminary injunction will not be issued by the clerk of this Court until Carborundum has given security in the sum of one-hundred, twenty-five thousand dollars ($125,000), which sum the Court deems proper, for the payment of such costs and damages as may be incurred or suffered by any person who is found to have been enjoined wrongfully. Rule 65(c), Federal Rules of Civil Procedure. The preliminary injunction, if issued, shall bind only the defendant Mr. Gerald Irwin Williams, his agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of this order. Rule 65(d), Federal Rules of Civil Procedure.

Parenthetically, the plaintiff seeking herein, as additional relief, a perpetual injunction against Mr. Williams' violation of his aforementioned employment agreement with it, this Court senses an obligation to invite attention of the parties and their counsel, prior to the incurrence of great expenses of litigation, to the fact that any further restraint of Mr. Williams thereunder might be only for such period of time as would be found required reasonably to re-

move any competitive advantage which CE might have gained through the use of information communicated to them by Mr. Williams, if a trade secret is found to be involved. Cf. *Bryan v. Kershaw*, C.A. 5th (1966), 366 F.2d 497, certiorari denied (1967), 386 U.S. 959, 87 S.Ct. 1030, 18 L.Ed.2d 108 (where Texas law was applied); *Schulenburg v. Signatrol* (1965), 33 Ill.2d 379, 212 N.E.2d 865, certiorari denied (1966), 383 U.S. 959, 86 S.Ct. 1225, 16 L.Ed.2d 302. It is noted that the plaintiff completed successfully its own research and development in a comparatively modest period of time.