IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2003 Session

## MURFREESBORO MEDICAL CLINIC, P.A. v. DAVID UDOM

**Direct Appeal from the Chancery Court for Rutherford County**
**No. 02-5739CV      Robert E. Corlew, III, Chancellor**

**No. M2003-00313-COA-R9-CV - Filed January 30, 2004**

This case involves the enforcement of a non-compete agreement. Plaintiff filed suit to enjoin Defendant from practicing medicine in violation of a covenant not to compete entered into by the parties. The trial court granted Plaintiff's application for a temporary injunction from which Defendant sought this interlocutory appeal. We reverse in part, affirm in part, and remand.

**Tenn. R. App. P. 9; Judgment of the Chancery Court Reversed in part; Affirmed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and PATRICIA COTTRELL, J., joined.

Douglas B. Janney, III, Nashville, Tennessee, for the appellant, David Udom.

Josh A. McCreary, Murfreesboro, Tennessee, for the appellee, Murfreesboro Medical Clinic, P.A.

### OPINION

Defendant/appellant, Dr. David Udom (Dr. Udom), accepted an oral offer of employment from plaintiff/appellee, Murfreesboro Medical Clinic (MMC), a Tennessee professional corporation, to practice internal medicine. MMC subsequently sent to Dr. Udom an employment and stock transfer agreement (employment contract) for his review and signature. The employment contract provided for an initial two-year term of employment and gave MMC the option of extending Dr. Udom's employment. The employment contract also contained a non-compete agreement which provided that "[u]pon any termination of this [employment contract] . . . the [e]mployee agrees not to engage in the practice of medicine within a twenty-five (25) mile radius of the public square of Murfreesboro, Tennessee for a period of eighteen (18) months following such termination." In addition, the non-compete agreement contained a compensation for competition clause or buy-out provision (buy-out provision), whereby upon termination, the employee doctor may compete so long as MMC is compensated twelve times the amount of the

employee's most recent monthly salary. Upon review of the employment contract, Dr. Udom signed and delivered the employment contract to MMC.

At the expiration of the initial two years of the employment contract, the board of directors for MMC decided not to extend Dr. Udom's employment contract. Dr. Udom subsequently opened an office for medical practice in Smyrna, Tennessee, fifteen miles from the public square of Murfreesboro, Tennessee. MMC filed a complaint against Dr. Udom seeking, *inter alia*, to enjoin Dr. Udom's current practice. At the conclusion of a hearing on MMC's application for a temporary injunction against Dr. Udom, the trial court granted the temporary injunction enjoining Dr. Udom from practicing medicine within a twenty-five mile radius of the public square of Murfreesboro, Tennessee. In a separate order, the trial court entered its findings of facts and conclusions of law. The court found the eighteen month duration contained in the non-compete clause reasonable. The court expressed some concern as to the twenty-five mile geographic radius contained in the non-compete agreement because of two hospitals located in the Metropolitan area of Nashville, but because Dr. Udom indicated no desire to practice at either of those facilities, the court ultimately found no immediate harm to Dr. Udom in enforcing the non-compete agreement. In relying upon case law from other jurisdictions, the court found that $250,000 would be an excessive amount to satisfy the buy-out provision. The court, without direct proof as to the amount that would satisfy the buy-out, arrived at an amount of $120,000 "based upon statements by counsel" of Dr. Udom's salary. After a subsequent hearing, the trial court rendered a bench order, resulting in Dr. Udom being able to place $120,000 with the office of the clerk and master in order to continue his Smyrna practice.[1] Subsequently, Dr. Udom filed an application for permission to pursue interlocutory appeal which was granted by this Court and the trial court. Upon Dr. Udom's motion, this Court stayed enforcement of the temporary injunction pending this appeal. Additionally, Dr. Udom filed a motion with this Court for an order to release funds, which, upon consideration of that motion and MMC's response to that motion, this Court denied.

## Issues Presented

Dr. Udom raises the following issues, as we perceive them, for review by this Court:

1.  Whether the Chancery Court erred in granting MMC a temporary injunction.

2.  Whether the non-competition provision, as it applies to Dr. Udom, is enforceable.

---

[1] The bench order is not found in the technical record but both parties neither dispute its existence nor its substance. Further, proof of the of the order's substance can be found found in Chancellor Corlew's letter to counsel supplemented as exhibit 2 of MMC's response and objection to motion for order to release funds filed with the court.

## Standard of Review

To the extent these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d); *Sullivan v. Sullivan*, 107 S.W.3d 507, 509 (Tenn. Ct. App. 2002). We may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. *Sullivan*, 107 S.W.3d at 510. With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *Id.*

## Temporary Injunction

In granting a temporary injunction, the court considers "'(1) the threat of irreparable harm to plaintiff if the injunction is not granted; (2) the balance between the harm and the injury that granting the injunction would inflict on the defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.'" *S. Cent. Tenn. R.R. Auth. v. Harakas*, 44 S.W.3d 912, 919 n.6 (Tenn. Ct. App. 2000) (quoting Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 4-3(l) (1999)). In determining whether the harm is irreparable, it is well settled that "[w]here there is a full, complete, and adequate remedy at law for an injury, it is not irreparable." *Fort v. Dixie Oil Co.*, 95 S.W.3d 931, 932 (Tenn. 1932). Further, "[a]n injury is irreparable if it cannot be undone through monetary remedies." *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984) (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

In this case, Dr. Udom and MMC agreed to a specific sum of money that would be an adequate remedy in the event Dr. Udom breached the non-compete clause. Further, although the trial court found that MMC would suffer an irreparable injury if Dr. Udom violated the non-compete clause, the agreement nevertheless allowed Dr. Udom to resume his Smyrna practice by placing a sum equal to the buy-out provision of the non-compete clause with the clerk and master of the chancery court. As a result, the trial court's finding of irreparable injury must be reversed because the employment agreement provided an adequate remedy in the form of the buy-out provision. Accordingly, the trial court's grant of temporary injunction against Dr. Udom must be reversed.

## Enforceability of the Non-Compete Agreement

Dr. Udom next contends that the non-compete clause as it applies to Dr. Udom, a private physician, is unenforceable because it is unreasonable, overly broad, not protecting a recognized interest, and void as against public policy. In *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361 (Tenn. 1966), the Tennessee Supreme Court enumerated the considerations involved in evaluating non-compete agreements.

> Agreements in restraint of trade, such as covenants restricting competition, are not invalid per se. Although disfavored by law, such agreements are valid and

will be enforced, provided they are deemed reasonable under the particular circumstances. (Citations omitted.)

> There is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned. Each case must stand or fall on its own facts. However, there are certain elements which should always be considered in ascertaining the reasonableness of such agreements. Among these are: [1] the consideration supporting the agreements; [2] the threatened danger to the employer in the absence of such an agreement; [3] the economic hardship imposed on the employee by such a covenant; and [4] whether or not such a covenant should be inimical to public interest. *See* 17 C.J.S. *Contracts* § 247; Williston on Contracts, Vol. 5, § 1636; *Welcome Wagon, Inc. v. Morris*, 224 F.2d 693 (4th Cir. 1955).

*Berry*, 409 S.W.2d at 363. Applying the first element to this case, MMC provided ample consideration, approximately $120,000 of annual salary, to Dr. Udom for his services and covenant not to compete after he left.

The second element of the threatened danger to the employer in the absence of the non-compete was most recently addressed in the case of *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471 (Tenn. 1984). In *Hasty*, the court discussed under what circumstances the law affords the employer protection from a former employee's competition.

> Of course, any competition by a former employee may well injure the business of the employer. An employer, however, cannot by contract restrain ordinary competition. *All Stainless, Inc. v. Colby*, 308 N.E.2d 481, 486 (Mass. 1974). In order for an employer to be entitled to protection, there must be special facts present over and above ordinary competition. *See* 17 C.J.S. *Contracts* § 254 (1963). These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer. *See Matthews v. Barnes*, 293 S.W. 993, 994 (Tenn. 1927).

> . . . . Such legitimate business interests include trade or business secrets or other confidential information. *See, e.g., Mathews*, 293 S.W. at 994; *Colby*, 308 N.E.2d at 486. Restrictive covenants have been held reasonable where the employee closely associates or has repeated contact with the employer's customers so that the customer tends to associate the employer's business with the employee. *See, e.g., Mathews*, 293 S.W. at 994; *Hosp. Consultants, Inc. v. Potyka*, 531 S.W.2d 657, 661 (Tex. App. 1975).

*Hasty*, 671 S.W.2d at 474. There are few professions that enjoy the closeness and trust that is found in the doctor-patient relationship. A patient most likely identifies his business with Dr. Udom rather than with MMC. When Dr. Udom leaves MMC, many of his patients and MMC's

former customers will likely leave to continue seeing Dr. Udom. As such, MMC has a legitimate business interest in its customers that deserves protection.

Turning our focus to the third element of the economic hardship imposed by the covenant on the employee, this Court finds that the facts of this case mitigate any economic hardship Dr. Udom will experience. First, Dr. Udom was given the opportunity to fully review the non-compete clause contained in the employment agreement and knowingly entered into such an agreement. Second, this non-compete clause contained an option for Dr. Udom to continue his practice and compete in the proscribed area provided he compensate MMC one year's worth of his salary. Third, upon opening his new practice within the proscribed area, Dr. Udom was able to place a sum equal to his former salary with the clerk and master's office demonstrating his ability to practice despite any economic hardships imposed by the covenant.

Finally, this Court must determine whether the non-compete clause as it applies to Dr. Udom is inimical to public interest. This element was most recently addressed in *Medical Education Assistance Corporation v. East Tennessee State University*, 19 S.W.3d 803 (Tenn. Ct. App. 1999). In that case, this Court was faced with the validity of a covenant not to compete entered into between a state college of medicine and one of its faculty members, who additionally practiced medicine with a non-profit clinic affiliated with the state university. *E.T.S.U.*, 19 S.W.3d at 806. In that case, this Court identified two competing public interests in evaluating the covenant. *Id.* at 816. The first interest was that of the public and in particular "the right of a patient to choose her physician and to be allowed to continue that relationship even after the physician leaves her place of employment." *Id.* Additionally, this Court stated that "[t]he competing public interest is the public's interest in having an accredited, qualified, and well staffed medical college in East Tennessee." *Id.* Weighing these two competing interests, the court ultimately held the covenant enforceable because the public benefits from having physicians trained by qualified faculty. *Id.* This Court, however, emphasized that their decision was limited to the facts of that particular case. *Id.*

In this case, the public's interest in allowing a patient to choose her physician is still prominent while the competing interests differ from those found in the *E.T.S.U.* case. MMC is a for profit corporation and the interest of having a well qualified faculty is not present. However, as aforementioned, MMC does have a legitimate business interest in its customers that is worthy of protection. Further, this Court recognizes, as have other jurisdictions in enforcing non-compete clauses as applied to physicians, Dr. Udom and MMC's right to contract. *Beam v. Rutledge*, 9 S.E.2d 476, 478 (N.C. 1940)

> This right of the parties to say upon what terms and conditions they are willing to form a partnership, or to enter into a contract of the character here disclosed, is not to be lightly abridged. Indeed it is no small part of the liberty of the citizen. (Citations omitted.) "Freedom to contract must not be unreasonably abridged. Neither must the right to protect by reasonable restrictions that which a man by

industry, skill, and good judgment has built up be denied." *Eureka Laundry Co. v. Long*, 131 N.W. 412 (Wis. 1911).

*Beam*, 9 S.E.2d at 478. In weighing the competing interests, the public interest in a patient's right to choose her physician is tempered by the facts of this case. The non-compete agreement prohibits Dr. Udom from opening a practice within twenty-five miles of Murfreesboro. If Dr. Udom is to open a practice outside of the prohibited area, it is not uncommon for a patient to drive a half-hour or longer to visit their doctor. Further, the agreement provides Dr. Udom with the option to keep his former patients and practice within the proscribed area provided he comply with the buyout provision as has been done for Dr. Udom's current Smyrna practice.

The trial court ultimately found the twenty-five mile geographic radius and the eighteen month duration contained in the non-compete clause to be reasonable and this Court finds nothing in the record or in case law to hold to the contrary. *See Rash v. Toccoa Clinic Med. Assoc.*, 320 S.E.2d 170, 171-72 (Ga. 1984). Additionally, the trial court found that $250,000 would be an excessive amount for the buy-out provision and stated that $120,000 would be used "based upon statements by counsel" of Dr. Udom's salary. The record is not clear on the amount of Dr. Udom's salary nor the reasonableness of that amount in satisfying the buy-out provision. Accordingly, we hold the non-compete clause enforceable and reasonable as it applies to Dr. Udom but remand the case for the trial court's determination of the reasonableness and specific amount to be used in satisfying the buy-out provision.

## Conclusion

In light of the foregoing, we reverse the trial court's grant of MMC's application for temporary injunction and affirm the trial court's finding that the non-compete agreement was reasonable and enforceable. This case is remanded to the trial court for a proper determination of the reasonableness and specific amount to be used in satisfying the buy-out provision. Costs of this appeal are taxed one-half to the Appellee, Murfreesboro Medical Clinic, P.A., and one-half to the Appellant, David Udom, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE